STATE BAR GRIEVANCE ADMINISTRATOR v CORACE

1. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—HEARING PANEL
   —FINDINGS—STATE BAR GRIEVANCE ADMINISTRATOR—COM-
   PLAINT AGAINST ATTORNEY—CANONS OF ETHICS.

   State Bar hearing panel did not find that a replevin action
   commenced by an attorney "was without foundation and filed
   solely to harass" the defendant in that case as charged in the
   State Bar Grievance Administrator's formal complaint against
   the attorney; therefore, absent such a finding, a finding that
   the replevin action was "questionable", the conclusion that a
   former Canon of Ethics was infringed should be set aside as
   unsupported where that Canon provided that the responsibility
   for advising as to *questionable* transactions, for bringing *ques-
   tionable* suits, for urging *questionable* defenses, is the lawyer's
   responsibility (Canon of Ethics 31).

2. ATTORNEY AND CLIENT—SPEEDY REPRESENTATION—DISCIPLINE.

   Speed in asserting a client's rights does not subject a lawyer to
   professional discipline.

3. ATTORNEY AND CLIENT—DISCIPLINE—VICARIOUS RESPONSIBILITY—
   EVIDENCE.

   A lawyer is not subject to bar discipline on a theory of vicarious
   responsibility when there is no evidence or finding that he
   should have been aware of and guarded against a possible
   impropriety.

4. ATTORNEY AND CLIENT—DISCIPLINE—FINDINGS OF WRONGDOING—
   COMPLAINT.

   A lawyer may not be disciplined on the basis of findings of
   wrongdoing not charged in the formal complaint.

REFERENCES FOR POINTS IN HEADNOTES
[1–7, 11, 13] 7 Am Jur 2d, Attorneys at Law §§ 38–49, 167 *et seq.*
[8, 10] 7 Am Jur 2d, Attorneys at Law § 203 *et seq.*
[9] 7 Am Jur 2d, Attorneys at Law § 137.
[12] 7 Am Jur 2d, Attorneys at Law § 93.
[14] 7 Am Jur 2d, Attorneys at Law § 21.

5. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—HEARING PANEL
—FINDINGS—GARNISHMENTS—AFFIDAVITS—RECORD—EVIDENCE
—COMPLAINT AGAINST ATTORNEY.

A State Bar hearing panel's finding that a lawyer "did sign
affidavits of garnishment without regard to their truth or
falsity of the exact amount due and owing at the time of
signature" is not supported by the record, where there is no
evidence, nor is it claimed, that the lawyer did not conscien-
tiously believe that his client was entitled to charge the princi-
pal defendant the statutory costs claimed, and the lawyer was
not charged with filing untrue or false affidavits.

6. ATTORNEY AND CLIENT—ATTORNEY'S METHODOLOGY—DISCIPLINE—
IMPROPRIETY.

A "methodology" of a lawyer on behalf of his client, proper in
itself, does not render him subject to bar discipline because it
gives the appearance of impropriety.

7. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—GARNISHMENT—
PROOF OF SERVICE—FAILURE TO FILE—PREJUDICE—STATE BAR
GRIEVANCE ADMINISTRATOR.

Absent a showing that an attorney's failure to file with the court
proofs of service of writs of garnishment was more than a
harmless oversight, that someone was prejudiced, this should
not concern the State Bar Grievance Administrator.

8. ATTORNEY AND CLIENT—CONTRACTS—ATTORNEY'S FEES—ATTOR-
NEY'S DUTY.

A lawyer seeking, undeterred by "fear of judicial disfavor", to
enforce his client's claimed contractual right to recover a
reasonable attorney's fee was consistent with his duty to insure
that nothing be taken or be withheld from his client, save by
the rules of law, legally applied.

9. ATTORNEY AND CLIENT—ADVERSE DECISION—ATTORNEY'S DUTY—AP-
PEAL AND ERROR.

A lawyer has no duty, professional or moral, to appeal an adverse
decision.

10. COURTS—COMMON PLEAS COURT OF DETROIT—COURT RULES—CON-
TRACTS—ATTORNEY'S FEES—DISCLOSURE—SUPREME COURT—NO-
TICE—SUPERINTENDING CONTROL.

The judges of the Common Pleas Court of Detroit, if they desire a
local court rule requiring clearer disclosure of contractual
claims for attorney's fees, may proceed under the court rule
providing that the Michigan Supreme Court must be notified in
writing ten days before the adoption or amendment of any local

court rule and that the adoption or continuance of such a rule is subject to the superintending control of the Supreme Court (GCR 1963, 927).

11. ATTORNEY AND CLIENT—CANONS OF ETHICS—CONDUCT—BOUNDS OF LAW.

The language of a former Canon of Ethics that "the great trust of the lawyer is to be performed within and not without the bounds of the law" bars only conduct clearly without the bounds of the law (Canon of Ethics 15).

12. ATTORNEY AND CLIENT—ATTORNEY'S OBLIGATION.

A lawyer's obligation to his client, when a question is doubtful, permits him to assert the view of the law most favorable to his client's position; our adversary system intends and expects lawyers to probe the outer limits of the bounds of the law, ever searching for a more efficacious remedy, or a more successful defense.

13. ATTORNEY AND CLIENT—DISCIPLINE—CLAIMS—DEFENSES.

A lawyer may not properly be disciplined for acting without the bounds of the law unless it is established that he knowingly advanced a claim or defense that was unwarranted.

14. COURTS—JUDGES—COURT ADMINISTRATOR—STATUTES—COURT RULES—CONSTRUCTION—ATTORNEY AND CLIENT—APPEAL AND ERROR—SUPREME COURT—SUPERINTENDING CONTROL.

A trial judge or local court administrator, if he believes a construction of a statute or court rule advanced by a lawyer is erroneous and the lawyer refuses to follow the judge's construction in subsequent cases and the question appears to be eluding appellate review, may so advise the Michigan Supreme Court which, in the exercise of its general superintending control, may consider granting leave to appeal or promulgating an administrative order or court rule.

Appeal from State Bar Grievance Board. Submitted April 4, 1973. (No. 14 April Term 1973, Docket No. 54,043.) Decided December 18, 1973.

Disciplinary proceedings against Robert G. Corace, Jr. Order entered suspending respondent from practicing law for 60 days. Respondent appeals. State Bar Grievance Administrator cross-appeals. Reversed.

*Louis Rosenzweig,* for State Bar Grievance Administrator.

*R. G. Corace, P. C.* and *Kenneth A. Webb, P. C. (Stanley E. Beattie,* of counsel), for respondent.

LEVIN, J. Robert G. Corace, Jr. appeals a disciplinary order of the State Bar Grievance Board which suspended him from the practice of law for 60 days and assessed costs. The State Bar Grievance Administrator has cross-appealed contending that a more severe penalty should be imposed.

In contrast with most State Bar disciplinary proceedings, here the complainants are not former clients of the lawyer. The complainants are persons who were opposed by Corace's clients and a person who, at the time, was the Clerk of the Common Pleas Court of Detroit.

We reverse and dismiss the charges because the findings do not warrant disciplinary action:

I

Corace, while representing a 50% stockholder of a close corporation, requested corporate records from Robert L. Coopes, a lawyer and secretary of the corporation.

After several unsuccessful attempts to obtain the records, Corace commenced a replevin action against Coopes. The Administrator's formal complaint charged that the action "was without foundation and filed solely to harass said Robert L. Coopes".

The hearing panel found that Corace "infringed"

former Canon 31 because "respondent in bringing
suit for Kalka [Corace's client], did so rather has-
tily though within his legal rights".[1]

Former Canon 31 stated: "[t]he responsibility for
advising as to *questionable* transactions, for bring-
ing *questionable* suits, for urging *questionable* de-
fenses, is the lawyer's responsibility." (Emphasis
supplied.)

The hearing panel did not find that the replevin
action "was without foundation and filed solely to
harass" Coopes. Absent such a finding, a finding
that the replevin action was "questionable", the
conclusion that Canon 31 was infringed must be
set aside as unsupported.

No canon or other authority has been cited
proscribing the "rather hasty" commencement of a
proper action. Speed in asserting a client's rights
does not subject a lawyer to professional discipline.

The complaint also charged that Corace "did
cause" the name of Robert L. Coopes to be signed
to a stipulation for adjournment without Coopes'
authorization or consent. The stipulation had been
signed by a clerk employed by Corace who acted
under the supervision of an associate lawyer. The
hearing panel found Corace culpable because he
"stated that he took the responsibility for the
running of his office. Although it appears that he
did not in fact sign Mr. Coopes' name to the
stipulation the responsibility must be his. There is
no evidence that upon discovery he took any steps

---

[1] Coopes' request for investigation stated that he wrote Corace
requesting that he obtain a release from a lawyer who had previously
represented Corace's client and that he, Coopes, had informed a
lawyer associated with Corace that the records were at the corporate
offices. The Administrator's formal complaint repeated the allegation
that Corace had been advised that the records were located at the
corporate offices but stated that Coopes had requested that Corace
obtain a "release" from his client, not from the lawyer who formerly
represented his client. The hearing panel did not advert to these
factual contentions in its findings of fact or conclusions.

to explain to Mr. Coopes why his name was used on the stipulation without his consent or under the circumstances 'showing cause before the Court'."

The Administrator did not substantiate his charge that Corace "did cause" the name of Robert L. Coopes to be signed. Rather than "causing" Coopes' name to be signed, Corace was oblivious of the inclusion of Coopes' signature until after the commencement of disciplinary proceedings against him.[2]

Although Corace did acknowledge that he was legally responsible for the actions of his employees,[3] a lawyer is not subject to bar discipline

---

[2] Corace testified that the details of the action against Coopes had been handled by one of his associate lawyers. Corace further testified that the first he knew about the stipulation was when he received the "first letter" from the Administrator. He said that he explained to the lawyer employed by him that he had made it a practice *not* to sign another lawyer's name to a pleading even with the lawyer's approval.

The lawyer employed by Corace testified that the unauthorized signature resulted from a misunderstanding he had with a clerk he was supervising. The clerk erroneously signed both lawyers' names and filed the stipulation.

There was no other testimony relating to this issue.

[3] The following are the relevant questions and answers on this concession by Corace:

"*Q.* You are responsible for your employees in your office, are you not?

"*A.* I am, sir.

"*Q.* So, whatever they do, the responsibility is yours?

"*A.* Yes, sir, legally. * * *

"*The Chairman:* I think in fairness to everyone you are contending that you do not have the responsibility to know what is going on in your office.

"*A.* No, sir, that is why I answered the question the way I did. I don't mean to sidestep this thing by saying that I am not responsible for what my people do. But, if in a particular act, I—they did something that I didn't know about, which was unethical, or, in a particular situation they did something—and I didn't ratify it or approve of it, then I don't think that I am subject to censure by this Board because of the unethical practice of some other member of my office that I haven't counseled or advised or ratified.

"That was the only limitation I wanted to put on that.

"As a practical matter, I would be legally liable whether I counseled it, if it was done in the ordinary course of business.

on a theory of vicarious responsibility when there is no evidence or finding that he should have been aware of and guarded against a possible impropriety.

We are at a loss to understand the hearing panel and Grievance Board's criticism of Corace for failing to explain the signature to Coopes under the circumstance that bar disciplinary proceedings were commenced before Corace learned of the signature.

The formal complaint does not charge a failure to explain unauthorized conduct by a clerk or an associate lawyer but rather that Corace had "caused" the placing of the signature. Hearing panels and the Grievance Board far too frequently stray from the specifications of the charge, finding a lawyer guilty not of the conduct charged in the complaint but of something else. We have recently had cause to emphasize that a lawyer may not be disciplined on the basis of findings of wrongdoing not charged in the formal complaint. *State Bar Grievance Administrator v Jackson,* 390 Mich 147, 155; 211 NW2d 38 (1973).

## II

Corace, while representing a finance company, obtained a judgment of $346.92 against Robert Kelley, Jr. Kelley paid $20 toward the judgment on an installment plan, but failed to pay other installments. Corace caused the issuance of six writs of garnishment addressed to Kelley's employer, each claiming the balance due of $332.42.

*"The Chairman:* Are you through?

"A. All I was saying was, when I answered his question, he said and aren't you responsible for the actions of your employees, and I said, I certainly am legally responsible, meaning that I am responsible in damages for their acts."

The employer eventually paid Corace the total amount garnisheed, $505.45, for a release of the writs of garnishment.

Contending that Corace had wrongfully appropriated for attorney's fees and costs the difference between the amount of the judgment and the amount collected from Kelley's employer, Kelley commenced an action and obtained a judgment against Corace and his client in the sum of $173.53 plus costs and attorney's fees, which was affirmed on appeal to the circuit court. Leave to appeal was denied by the Court of Appeals, and Corace did not apply for leave to appeal to this Court.

Kelley's request for investigation was filed February 10, 1969. Corace's answer was filed March 3, 1969. On November 6, 1969 the State Bar Grievance Administrator advised Corace and Kelley that Kelley's request for investigation had been dismissed.[4]

A year later, on November 24, 1970, following

---

[4] The letter from the State Bar Grievance Administrator to them reads in part:

"The record discloses that Mr. Corace started suit against Mr. Kelley and obtained judgment against him on the behalf of his client. Collection of this judgment gives rise to the Request for Investigation.

"Mr. Kelley charges that through a succession of garnishments Mr. Corace collected more money than the sum due and owing under the judgment. Mr. Corace filed a most detailed answer to the Request for Investigation which was forwarded to the complainant who has responded thereto.

"A recapitulation of the account indicates the figure of $18.65 was collected in excess of the judgment against Mr. Kelley. Mr. Corace maintained from the outset that this surplus had been mailed to Mr. Kelley. Apparently, he never received it. Consequently, enclosed in this envelope is a check made payable to Mr. Kelley in that amount from Corace's client.

"We do not deem this error to constitute an act of professional misconduct. Whether or not these facts give rise to a civil action against Mr. Corace by Mr. Kelley is a question which can only be answered by Mr. Kelley's attorney.

"In view of the above and pursuant to Rule 15, Section 5, a recommendation was made to the Supervising Commissioner for this district that this Request for Investigation be dismissed and the file closed: that recommendation has been adopted by the Commissioner."

receipt of Coopes' request for investigation, counsel for the State Bar Grievance Administrator advised Corace and Kelley by letter that Kelley's request had been "reopened by this office for further consideration".

The hearing panel found that Corace "did wrongfully after entry of Default Judgment, collect, hold and withhold monies belonging to Mr. Kelley; did sign affidavits of garnishments without regard to their truth or falsity of the exact amount due and owing at the time of signature; that the methodology or scheme gives the appearance (of improper conduct) so that attorney fees added in a judgment could be the determining feature of compensation between a lawyer and client. That he failed to return proofs of service of Writs of garnishment to Court files where they properly belong. As before stated every Court file should be complete when finished. No one has the right to tamper with Court files without authority. That in electing to unilaterally or arbitrarily determine the 'reasonableness of attorneys fees' usurped the function of the Court."

Corace claimed the right to charge Kelley $20 in respect to each writ of garnishment and to charge him for the fees and mileage of the sheriff in serving the writs of garnishment, and that this left a balance of $22.73. Corace's client calculated the interest due on the judgment at $4.08 and sent Kelley a check for the difference of $18.65.

Corace relies on §§ 2441 and 2558 of the Revised Judicature Act and the court rule.[5] He maintains

---

[5] Section 2441 (MCLA 600.2441; MSA 27A.2441) provides:

"(2) In all civil actions or special proceedings in the circuit courts, whether heard as an original proceeding or on appeal, the following amounts shall be allowed as costs in addition to other costs unless the court otherwise directs:

"(a) for the proceedings before trial, $20.00."

that a garnishee defendant's liability to a plaintiff upon writs of garnishment may be settled just as any other liability between two litigants may be settled. Their settlement would not be binding upon the principal defendant and he would thereafter be free to litigate the matter, as he did. On that basis, Corace argues, a settlement between the plaintiff and the garnishee defendant could properly include any amount properly allowable in the event the matter were pursued to judgment.

Corace relies on former Canon 32 which provided that "until a statute shall have been construed and interpreted by competent adjudication, [a lawyer] is free and is entitled to advise as to its validity and as to what he conscientiously believes to be its just meaning and extent".

There is no evidence, nor is it claimed, that Corace did not conscientiously believe that his client was entitled to charge Kelley the statutory costs claimed. It is not necessary to decide whether Corace's construction of the statute and the court rule is correct. In the absence of a controlling court rule, statute or judicial precedent there is no reason to doubt Corace's claim that he simply resolved a debatable question in favor of his client.

The record does not support the finding that Corace "did sign affidavits of garnishment without regard to their truth or falsity of the exact amount

---

Section 2558 (MCLA 600.2558; MSA 27A.2558) provides that the "fees of the sheriff shall be as provided in this section"; "for serving a writ of garnishment, $3.00"; and "for traveling in making such service, on the usual traveled route, 15 cents per mile for going only".

GCR 1963, 526 provides:

".1 Right to Costs as of Course. In any action or proceeding, costs shall be allowed as of course to the prevailing party, except when express provision therefor is made either in a statute or in these Rules, or unless the court otherwise directs, for reasons stated in writing and filed in the cause. * * *

".9 Costs in Garnishment Proceedings. Costs in garnishment proceedings shall be allowed as in civil actions."

due and owing at the time of signature". Corace was not charged with filing untrue or false affidavits. Nevertheless, his office procedures and the safeguards followed to avoid the filing of an improper affidavit were explored at the hearing. Careful records were maintained by Corace to avoid the filing of improper affidavits and imposition on debtors or the courts.

A "methodology" of a lawyer on behalf of his client, proper in itself, does not render him subject to bar discipline because it "gives the appearance" of impropriety.[6]

Corace was not charged in the formal complaint with failing to file with the court proofs of service of the writs of garnishment. Absent a showing that his failure to file proofs of service was more than a harmless oversight, that someone was prejudiced, this should not concern the State Bar Grievance Administrator.

## III

The then Clerk of the Common Pleas Court of Detroit charged Corace with improperly including

---

[6] EC 9-2 provides: "While a lawyer should guard against otherwise proper conduct that has a tendency to diminish public confidence in the legal system or in the legal profession, his duty to clients or to the public should never be subordinate merely because the full discharge of his obligation may be misunderstood or may tend to subject him or the legal profession to criticism."

DR 9-101 states that a lawyer shall avoid accepting private employment "in a matter upon the merits of which he has acted in a judicial capacity" or "in a matter in which he had substantial responsibility while he was a public employee" and that "a lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official."

The conduct charged against Corace occurred before October 4, 1971, the date of adoption of the Code of Professional Responsibility and Canons. We have referred to some of the present Canons, Disciplinary Rules and Ethical Considerations as they show that under present standards as well the conduct charged is not subject to bar discipline.

attorney's fees (generally $45) as damages in a large number of actions commenced on written instruments.

The formal complaint charged that Corace's practice was contrary to statutes and court rules and constituted "overreaching, an abuse of process and abuse of the courts". It further charged Corace with perpetrating a "fraud on the Court and upon the litigants".

In several instances, judges of the common pleas court had disallowed Corace's claim that he had a right to add attorney's fees as part of the damages. The hearing panel concluded that Corace's concession in his answer to the formal complaint that "certain judges of the Common Pleas Court of Detroit have refused to award attorney's fees as part of the damages in said action, because they conceived they had discretion in the matter" substantiated the "conflict he was having on the question of awarding attorneys fees as part of damages. Clearly he knew he should seek Court review for unanimity on the question even if there be differing opinions. Further clarification of cases so well argued in the briefs could be viewed as necessary to the better Administration of Justice. This was not done. A definitive decision could have prevented the violation of Canon 15. (The Canon must be read in its entirety and understood.)"

Former Canon 15 provided that a lawyer may not "do whatever may enable him to succeed in winning his client's cause". He may not violate the law or indulge in "any manner of fraud or chicane. He may obey his own conscience and not that of his client." The Canon also provided:

"The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and

ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense."

In including a $45 attorney's fee as part of the claimed damages in actions commenced in the common pleas court, Corace relied on written agreements between the obligor-defendants and his obligee-clients, the owners and holders of commercial and chattel paper, providing that upon default and reference to an attorney the obligor would pay the reasonable attorney's fees expended by the obligee.

In *In re Schafer's Bakeries,* 155 F Supp 902, 909 (ED Mich, 1957), the court held that agreements "for payment of reasonable attorneys' fees and expenses do not violate the public policy of Michigan, are also valid under the law of Michigan and are therefore enforceable under Michigan law".[7]

---

[7] The Court had previously said:

"A long line of Michigan cases holds that provisions in mortgages for payment of a specified sum as attorney fees not authorized by statute or rule of court violate Michigan public policy and are void. [Citations omitted.]

"The reasoning of the Michigan Supreme Court in these cases is that such fixed sums for attorney fees have no relationship to the actual expense which may be incurred by the mortgagee and are therefore void as constituting a penalty. On the other hand, a trust mortgage provision for payment of a reasonable attorney fee in event of foreclosure was held valid in the case of *Security Trust Co v Solomon,* 241 Mich 52; 216 NW 405 (1927). There appear to be no other Michigan cases construing the effect of a provision in a security instrument for reasonable attorney fees."

Earlier the United States Court of Appeals for the Sixth Circuit had stated in *Butzel v Webster Apartments Co,* 112 F2d 362, 365 (CA 6, 1940):

"The rule prevails in Michigan that an agreement by a mortgagor to pay a stipulated attorneys' fee on default and foreclosure is

We need not decide whether *Schafer's Bakeries* accurately states the law of Michigan. In light of that decision, it cannot be said that Corace was "violating the law" or indulging in "any manner of fraud or chicane" in asserting a right of his clients to recover a reasonable attorney's fee. Seeking, undeterred by "fear of judicial disfavor", to enforce his client's claimed contractual right to recover a reasonable attorney's fee, was consistent with Corace's duty to insure that "nothing be taken or be withheld from [his client], save by the rules of law, legally applied".

A lawyer has no duty, professional or moral, to appeal an adverse decision. Each adverse ruling resulted in a monetary loss of $45. The costs of appeal might well have been regarded as outweighing the benefit of possible vindication in a higher court.

Corace was not obliged to obtain a "definitive decision" from an appellate court. He could not insist that his client appeal an adverse ruling of a judge of the Common Pleas Court of Detroit. If his client had been interested in appealing, Corace could not have assured him that if the circuit court ruled against him either the Court of Appeals or this Court would grant leave to appeal.

The amount Corace sought as attorney's fees was specifically set forth in the declaration filed in each action: "The plaintiff is entitled to attorney's fees of $45." Attached to the declaration was a copy of the written agreement between Corace's client and the defendant requiring payment of a reasonable attorney's fee.

contrary to public policy and invalid. *Curtis v Mueller,* 184 Mich 148; 150 NW 847 [1915]; *Myer v Hart,* 40 Mich 517; 29 Am Rep 553 [1879]. However, a reasonable fee may be allowed, measured by the fair value of the services rendered. *Security Trust Co v Solomon,* 241 Mich 52; 216 NW 405 [1927]."

If the judges of the Common Pleas Court of Detroit desire a local court rule requiring clearer disclosure of contractual claims for attorney's fees,[8] they may proceed as provided in GCR 1963, 927. That rule states that this Court must be notified in writing ten days before the adoption or amendment of any local court rule and that the adoption or continuance of such a rule is subject to the superintending control of this Court.

### IV

The hearing panel and Grievance Board reprimanded Corace essentially for representing his clients too zealously and for acting contrary to controlling precedent. We have previously referred to former Canon 15 which the Grievance Board apparently interpreted as restricting a lawyer to conduct which is clearly within the bounds of the law. Corace contends that the language of the Canon, "the great trust of the lawyer is to be performed within and not without the bounds of the law", bars only conduct clearly without the bounds of the law.

Present Canon 7 reads: "A lawyer should represent his client zealously within the bounds of the law." The accompanying statement of Ethical Con-

---

[8] The printed form, Memorandum of Testimony in Default Judgment, contains blank spaces for the following:

"The amount of the debt is___Costs___Atty Fee___."

Consistent with his legal theory that he was seeking attorney's fees as an element of his client's damages, not as costs, and with the form of his declaration which claimed the attorney's fees as damages, both in the body of the declaration and in the *ad damnum* clause, Corace listed in the space provided for "debt" the attorney's fees claimed as part of the amount stated in the *ad damnum* clause and not in the blank space provided for "atty fee".

siderations supports Corace's construction of this language.[9]

Disciplinary Rule 7-102(A) also elaborates on the lawyer's obligation to represent a client within the bounds of the law. It states that in his representation of a client, a lawyer shall not advance a claim or defense "when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another"; and that he may not "knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law".

There are a large number of gray areas in the law. When a question is doubtful, the lawyer's obligation to his client permits him to assert the view of the law most favorable to his client's position. The *in terrorem* effect the Grievance Board reads into the Canon would unduly restrict a lawyer in fulfilling his professional responsibility of representing his client "competently" (Canon 6) and "zealously" (Canon 7).

We agree with Corace that our adversary system "intends, and expects, lawyers to probe the outer

[9] "EC 7-2 The bounds of law in a given case are often difficult to ascertain. * * *

"EC 7-3 Where the bounds of law are uncertain, the action of a lawyer may depend on whether he is serving as advocate or adviser. * * * While serving as advocate, a lawyer should resolve in favor of his client doubts as to the bounds of the law. In serving a client as adviser, a lawyer in appropriate circumstances should give his professional opinion as to what the ultimate decisions of the courts would likely be as to the applicable law.

"EC 7-4 The advocate may urge any permissible construction of the law favorable to his client, without regard to his professional opinion as to the likelihood that the construction will ultimately prevail. His conduct is within the bounds of the law, and therefore permissible, if the position taken is supported by the law or is supportable by a good faith argument for an extension, modification, or reversal of the law. However, a lawyer is not justified in asserting a position in litigation that is frivolous."

limits of the bounds of the law, ever searching for a more efficacious remedy, or a more successful defense".

A lawyer may not properly be disciplined for acting without the bounds of the law unless it is established that he knowingly advanced a claim or defense that was unwarranted.

If a trial judge or local court administrator believes a construction of a statute or court rule advanced by a lawyer is erroneous and the lawyer refuses to follow the judge's construction in subsequent cases and the question appears to be eluding appellate review, the judge or local court administrator may so advise this Court which, in the exercise of its general superintending control, may consider granting leave to appeal[10] or promulgating an administrative order or court rule.

Reversed. The State Bar Grievance Administrator shall reimburse Corace for all amounts he may have paid to the Administrator in respect to costs assessed by the Grievance Board.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, and M. S. COLEMAN, JJ., concurred with LEVIN J.

WILLIAMS, J., concurred in the result.

[10] Const 1963, art 6, § 4; *see People v Taylor,* 380 Mich 754; 156 NW2d 793 (1968).