539 P.2d 242

**In the Matter of Mark B. CLARK, Attorney.**

**No. 11830.**

Supreme Court of Idaho.
June 23, 1975.

Wesley F. Merrill of Merrill & Merrill, Pocatello, for petitioner Mark B. Clark.

C. Timothy Hopkins of Hopkins & French, Idaho Falls, for Idaho State Bar Assn.

PER CURIAM:

This is a proceeding purportedly under Rule 168 of the Rules of the Supreme Court and the Board of Commissioners of the Idaho State Bar to review a recommendation for the discipline of a licensed attorney practicing law in Idaho.[1] We affirm and adopt the recommendatory order in part and modify in part.

Mark B. Clark was admitted to the Bar of this Court in 1950, is currently licensed and is practicing law in Pocatello, Idaho. On September 23, 1974, following an investigation of certain charges, a complaint of professional misconduct was filed against him with the Committee on Discipline of the Idaho State Bar. That complaint contained two counts, and after hearing thereon the Committee found instances of misconduct as to each count. The Committee recommended that Clark be suspended from the practice of law for six months, that he be fined $500, and that he be charged with the costs of the proceedings. Clark petitioned this Court for a review of that recommendatory order. We affirm that portion of the order imposing a fine and the costs of proceedings, and modify the suspension from practice to a period of 60 days.

The episode upon which Count I of the complaint is based is somewhat nebulous in its chronology and involves an alleged conflict of interest. One Stoneberg was involved in a two-vehicle collision in Pocatello, Idaho on May 28, 1973. The other involved vehicle was owned by one Don Davis, but was driven by his daughter Corey Miller. Stoneberg consulted with Clark on or about May 30, 1973 and was told by Clark to procure an accident report. He did so, and thereafter he and Clark discussed the accident in detail. At some later time Clark, after supposedly contacting Corey Miller, advised Stoneberg that, under all of the circumstances, he should settle the case. This Stoneberg refused to do; instead, he consulted a second attorney and thereafter discharged Clark. The precise date of Clark's discharge is unknown, and the Committee made no finding upon that matter. Clark never prepared a file in

1. Under Rule 167 of the Rules of the Supreme Court and the Board of Commissioners of the Idaho State Bar, the findings, conclusions and recommendation of a Committee on Discipline are to be forwarded to the Board of Commissioners for review and preparation of a recommendatory order. This order is then filed with the Idaho Supreme Court. Rule 168 allows the accused attorney thirty days after such finding to petition the court for review of the proceedings; otherwise, the court will enter final judgment upon the expiration of that time.

In this case, however, Mark Clark petitioned the court for review prior to the Board's development of a recommendatory order. Because no objection was raised to this procedural irregularity, we have accepted the petition for review and have reached the merits of the case.

the Stoneberg case, nor did he bill Stoneberg for his services. On June 28, 1973, Clark filed a divorce complaint on behalf of Corey Miller in Bannock County. The precise date upon which Clark commenced representing Miller is unclear. The Committee found that Clark was representing Miller at the time of the automobile accident, but this finding is unsupported by any evidence in the record.

On or about July 25, 1973 Clark, *on behalf of Don Davis,* addressed a letter to Stoneberg demanding that Stoneberg pay for the property damage to Davis's vehicle resulting from the May 28, 1973 accident. It is unclear at what precise point in time Clark began representation of Davis, and the Committee again made no finding in that regard. Upon receipt of that letter Stoneberg contacted the Idaho State Bar, which notified Clark of its interest in the matter on August 2, 1973. Clark then informed Davis that he, Clark, would have to withdraw from the case. The exact date at which Clark discovered his impropriety is unknown. The Committee found that Clark made this discovery when Stoneberg terminated Clark's services, but there is no connection between those two events evidenced in the record. Clark, on the other hand, asserts that he failed to realize any connection existed between Stoneberg, Miller and Davis until following the notification by the Idaho State Bar in August of 1973.

It was found by the Committee that Clark had violated the following:

1) Code of Professional Responsibility

a) Canon 1, DR 1–102(4)

b) Canon 5, DR 5–105(A), (B)

c) Canon 7, DR 7–102(A)(3)

2) Rules of the Supreme Court and the Board of Commissioners of the Idaho State Bar

a) Rule 153(b), (f), (o).

DR 5–105(A) provides:

"A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment."

 A lawyer who undertakes representation of one whose interests are adverse to those of a former client is guilty of violating DR 5–105(A) unless he obtains the requisite approval pursuant to DR 5–105(C). 7 Am.Jur.2d, Attorneys at Law § 34; Annot., 52 A.L.R.2d 1243 (1957) *supplementing* 51 A.L.R. 1307 (1927). In order for such interest to be generally adverse there must of course be a connection between the matters with respect to which attorney services are rendered, and it is clear that there is such a connection here. Although it may be, as Clark asserts, that the conflict occurred as a result of his failing to remember Stoneberg and prepare a file on the case, he must nevertheless be held responsible. See Annot. 52 A.L.R.2d 1243, § 5 (1957). We find no support in the record for the finding of violations of DR 5–105(B) or DR 7–102(A)(3) or DR 1–102(4).

As to Count II, the facts reveal the following:

Newel Lewis, the complaining witness, purchased an automobile on an installment basis, the automobile was later returned to the seller and sold, and a deficiency against Lewis established. Lewis did not pay the deficiency, and the matter was referred to Clark for collection. Clark filed a complaint against Lewis in Bannock County in December 1972. A holographic denial was filed with the court by Lewis in January 1973. Although a copy of that denial was mailed to Clark, he argues that there is no record that he received a copy. That denial is written upon what appears to be note paper and does not at first glance appear to be any type of formal legal document; this may account for the then magistrate George Hargraves'

failing to take notice of the "answer" and upon Clark's application therefor entering a default judgment against Lewis on March 13, 1974. On March 25, 1974 Clark obtained a writ of execution, effected garnishment against Lewis's wages and obtained therefrom $95.46. In early April, Lewis's wife called Clark to inquire why her husband's wages had been garnished and Clark asserted to her that he had no knowledge that a denial had been filed. Mrs. Lewis, unable to resolve the matter, contacted Magistrate Martin Ward, who discovered that Lewis had indeed filed an "answer." He informed Mrs. Lewis that judgment had been improperly entered and that the moneys garnished from her husband's salary would have to be returned. Ward then referred the matter to Magistrate Hargraves, who in turn called Clark and later that day (April 5, 1974) transmitted a letter to him. The substance of those discussions was that the default judgment had been erroneously entered and would be vacated unless the parties could resolve the differences. A copy of Hargraves' letter was sent to the Lewises. Within a few days, Mrs. Lewis was again in touch with Clark inquiring as to why the garnished moneys had not been refunded. Clark told her that no order vacating the judgment or directing return of the money had been received and gave Mrs. Lewis the impression that there were no difficulties or irregularities in the proceeding.

On or about April 24, 1974 the Lewises received a letter demanding payment or threatening "to issue executions upon any and all property and assets in [their] possession in order to satisfy this account." That letter was ostensibly signed by Clark, but had actually been drafted and signed in his office pursuant to routine office procedure by one Brimhall, who was a bookkeeper in Clark's employ. Brimhall was supposedly unaware of any problem with the judgment. The findings of the Committee indicate that the letter had been sent without Clark's knowledge. Shortly thereafter Mrs. Lewis filed a complaint with the Bar Association. At about that same time, Magistrate Hargraves, having learned that Clark had either issued a writ of execution or was threatening to do so, vacated the default judgment. On May 16, 1974 Clark refunded a portion of the garnished moneys. Clark admits error in refunding only a portion of the moneys. The Lewis lawsuit was eventually set for trial, but was settled prior thereto.

As regards Count II the Committee found that Clark had violated:

1) Code of Professional Responsibility

a) Canon 1, DR 1–102(4), (5), (6)

b) Canon 7, DR 7–102(A)(1), (3)

2) Rules of the Supreme Court and the Board of Commissioners of the Idaho State Bar

a) Rule 153(b), (e), (f), (h), (o).

We find Clark's conduct and the conduct of Brimhall for which he must be held responsible was sufficient to constitute a violation of at least one of the prescriptions of DR 1–102(4) which prohibits engaging in conduct involving fraud, dishonesty, deceit or misrepresentation, and (5), engaging in conduct prejudicial to the administration of justice. Having so found, we deem it inappropriate to hold Clark culpable for violating DR 1–102(6), which proscribes "other conduct that adversely reflects on his fitness to practice law."

Clark's deportment in dealing with the Lewises after his discovery that the default judgment had been improperly entered exceeded the bounds of propriety. In his telephone conversation with Mrs. Lewis following revelation of the erroneous entry of judgment and in the mailing of the April 24 letter (for which Clark must accept responsibility) Clark asserts he was attempting to settle the matter as was suggested to him by Hargraves, but he was

nevertheless dealing with a layman and doing so without acknowledging the defect in the judgment and garnishment procedures. Clark's assertions are also somewhat belied by acknowledgment that the bookkeeper who prepared the letter was aware of Clark's April 3 conversation with Mrs. Lewis.

■ The record supports the Committee's finding of a violation of DR 7–102(A)(1), prohibiting action taken on behalf of a client merely for the purpose of harassing or maliciously injuring another. It is clear that Clark's feigned ignorance of the invalidity of the default judgment (after having been so advised by Magistrate Hargraves) and of the garnishment proceedings was merely to harass the Lewises and thereby to effect a favorable settlement.

We find no support in the record of any clear violation of DR7–102(A)(3) or Rule 153(e) of the Rules of the Supreme Court and the Board of Commissioners of the Idaho State Bar. We further hold the finding of the Committee that Clark violated Rule 153(h) of the Rules of the Supreme Court and Board of Commissioners to be inappropriate. Our affirmance of the Committee's finding of a violation of DR 1–102(4) wherein the conduct of Brimhall is treated, is dispositive of that portion of the proceeding.

The finding of the Committee that Clark has engaged in violation of ethical standards is affirmed in part and vacated in part as contained herein. The recommendation that Clark be suspended from the practice of law for six months is hereby modified to a suspension from the practice of law for a period of 60 days. The recommendation of the imposition of a fine is affirmed; however, the amount of the fine is increased to $1,000. The costs of the proceeding are imposed upon Clark. It is so ordered.