20796

The STATE, Respondent, v. William Henry WRIGHT, Appellant.
(248 S. E. (2d) 490)

*John D. Delgado,* Columbia, *for appellant.*

*Atty. Gen. Daniel R. McLeod, Asst. Attys. Gen. Brian P. Gibbes* and *Kay G. Crowe,* and *Sol. James C. Anders,* Columbia, *for respondent.*

October 26, 1978.

LITTLEJOHN, Justice:

Defendant William Henry Wright, while serving as a prisoner at Goodman Correctional Institute was discovered missing from the facility. He was indicted for escape. At trial he was represented by John D. Delgado, Assistant Public Defender for Richland County. In spite of counsel's recommendation that he plead guilty and in spite of the fact that he was advised that he had no valid defense and that a trial would be futile, the defendant insisted upon trial. He was convicted and has appealed.

It was the contention of the defendant that some prisoners, upon escape, were dealt with administratively; it is apparent that he wanted to air what he conceived to be discrimination on the part of prison authorities. In cross-examining the warden, Mr. Delgado attempted to elicit answers tending to prove that his client had been ". . . singled out and selectively prosecuted by the Department of Corrections."

On his own motion the judge stopped the line of questioning and excused the jury. His subsequent admonition to defense counsel is the basis for the appeal. It is the contention of the defendant that his attorney was so disconcerted by the judge's reprimand that he was unable to effectively continue the trial of the case. Among the statements made by the judge to counsel are the following:

And it seems to me from what I have heard of your opening statement that you are, in fact, in a very serious position as to the canons and so forth of actually posing and presenting a frivolous defense here.

.    .    .    .    .

I would refer you to the Supplement, Canon Number Seven, particularly DR-7-106, the one about the position of the attorney is in in proffering a really spurious defense.

.    .    .    .    .

But the extent to which you participate in that defense has some circumscribing standards under both our Canons and the American Bar Association Criminal Standards on the administration of Criminal Justice.

.    .    .    .    .

With great reluctance I will permit some examination along this line but it is not going to be if so and so. It is going to have to be directed to specific matters and by permitting you to do so I certainly do not indicate that I approve of what I think is a violation of standards by you in so doing. That would be a matter for our Supreme Court to handle.

.    .    .    .    .

Sir I have a duty to make a report on anything of this nature. I would not do anything more than suggest that it be looked into or inquired into but I am not permitted to just lightly sit back and see something violated.

After a brief recess, he said:

I have considered the matter to the extent that while I have serious reservations as to the ethical propriety of a lawyer asserting even in the case of a public defender where he is appointed by the Courts to present what I consider to be a false defense. Nevertheless, if you will direct your questions with specificity to the witness and by that I mean as to any involvement of other persons, I would permit the continuation. I would not make a specific report on it but I would

want you to investigate it and I am going to investigate my-self to satisfy myself of my feeling on it but as of right now I don't have any hesitancy in arriving at that decision. . . .

Because of these comments, counsel asked that he be re-cused and also that a mistrial be granted. Both motions were overruled. The jury returned and the trial continued to a guilty verdict.

The confrontation in this case arises because of the zeal of the judge to expedite the work of his court and the zeal of counsel to represent his client as best as he could under difficult circumstances. Counsel always fear charges in post-conviction relief cases that some possible defense was not pursued, and fear charges that representation was in-adequate.

If the judge conceived the evidence tendered to be no defense and accordingly irrelevant, he should have excluded the same after permitting counsel, in the absence of the jury, to make an offer of proof for the record. *In re Corace,* 390 Mich. 419, 213 N. W. (2d) 124 (1973), concerned a Michigan lawyer who handled many foreclosures. He always prayed for attorney's fees under liquidated damage provisions in mortgages, despite a long-standing line of Michigan authority holding that such liqui-dated damage provisions were void. The Michigan Griev-ance Board sanctioned him; the Michigan Supreme Court reversed the Board. In interpreting the Disciplinary Rules under Canon 7, that court said:

[O]ur adversary system "intends, and expects, lawyers to probe the outer limits of the bounds of the law, ever search-ing for a more efficacious remedy or a more successful defense."

Even if a defense is not recognized at the time of trial, an attorney will not violate the Code by assert-ing it if his position "[can be supported] by a good faith argument for an extension, modification, or reversal of the law." Disciplinary Rule 7-102(A)(2). To under-

stand the requirement this rule places on attorneys, one must understand the words "good faith." It is made clear by Ethical Consideration 7-4 that an attorney's personal belief that a defense will fail is no evidence of bad faith:

The advocate may urge any permissible construction of the law favorable to his client, without regard to his professional opinion as to the likelihood that the construction will ultimately prevail. His conduct is within the bounds of the law, and therefore permissible, if the position taken is supported by the law or is supportable by a good faith argument for an extension, modification, or reversal of the law. However, a lawyer is not justified in asserting a position in litigation that is frivolous.

Bad faith has been found in cases of repeated, groundless vengeance suits, *In re Sarelas*, 50 Ill. (2d) 87, 277 N. E. (2d) 313 (1971), or deliberate, knowing misrepresentations to the state of law. *In re Clark*, 96 Idaho 889, 539 P. (2d) 242 (1975). The spirit of these cases is that to prove lack of good faith, one must prove some sort of evil intent. There is absolutely no evidence that defense counsel had such intent. The transcript makes clear counsel's good intent to do the best job he could for his client:

Your honor, . . . I have on numerous occasions since my appointment for Mr. Wright . . . advised him of the futility of a trial on the merits of this case. . . .

·   ·   ·   ·

I have a professional responsibility [and] if this man desires to go to trial after my efforts to advise him of the alternatives and possibility of a not guilty verdict, what else can I do?

·   ·   ·   ·

[T]his is the only defense I could argue with any type of belief sir. . . .

·   ·   ·   ·

I am simply attempting to do what I have to do in the best doggone way I can do it Judge.

After the Michigan Grievance Board had interpreted the Code in a manner similar to Judge Price's ruling, the Michigan Supreme Court said:

The *in terrorem* effect the Grievance Board reads into the Canon would unduly restrict a lawyer in fulfilling his professional responsibility of representing his client 'competently' (Canon 6) and 'zealously' (Canon 7).

Argument by counsel that the law should be changed is often a necessary part of representing his client zealously and competently.

While finding no prejudice warranting a new trial, we recognize that a new trial should be ordered when counsel is so inhibited by an improper rebuke that he feared to conduct an adequate defense. *State v. Simmons,* 267 S. C. 479, 229 S. E. (2d) 597 (1976) ; *Young v. United States,* 120 U. S. App. D. C. 312, 346 F. (2d) 793 (1965). Of course, if inhibition of counsel is the basis of the motion for a new trial, it is irrelevant whether or not the rebuke was made outside the jury's presence.

In *Simmons,* the presumption of prejudice was drawn because immediately after the rebuke by the court, counsel stopped his argument and sat down. However, the defendant as appellant, generally has the burden of producing a record indicating some sort of prejudice. *Watts v. Bell Oil Co. of Ocean Drive, Inc.,* 266 S. C. 61, 221 S. E. (2d) 529 (1976). While such prejudice is sometimes presumed, *id.,* it should not be where, as in this case, there is actually evidence that after the comment of the judge, defense counsel proceeded to elicit testimony concerning the defense. Defense counsel has not named any question he would have asked, argument he would have made, or witness he would have called, had the judge not made his admonitions. This court will not hesitate to grant a new trial where comments of a judge have affected either the outcome of the case or the effectiveness of counsel's presentation. Although the judge's statements understandably disconcerted

counsel, we have concluded that inasmuch as the admonition took place in the absence of the jury, and inasmuch as in truth the defendant had no defense, there is no prejudice warranting the granting of a new trial.

Affirmed.

NESS, RHODES and GREGORY, JJ., concur.

LEWIS, C. J., dissents.

LEWIS, Chief Justice (dissenting) :

The trial judge, in effect, charged counsel in open court with a violation of the Code of Professional Responsibility. I agree with the majority opinion that there was no basis for such charge.

I regret that I find myself in disagreement with the conclusion of the majority that the incident under inquiry was not reversible error. While counsel was eventually permitted to pursue the questioned defense, it was only after he was told by the court that he was being given specific permission to, in effect, pursue what the court considered a violation of the Canons of Ethics.

While I am convinced that the able trial judge acted with highest motives, the fact remains that his conduct, as claimed, could have operated to some extent as a restraint upon counsel's efforts in behalf of his client. It is true that the degree of such restraint cannot be determined or calculated with certainty from this record. It can be stated, however, with certainty that the statements of the judge to counsel were made for the sole purpose of restraining counsel in the pursuit of the questioned defense. Counsel thereafter represented his client under the implications of an allegation of unethical conduct. The probability of its impairment of counsel's ability to furnish effective representation with resulting prejudice to his client is such that a new trial should be granted.

I, therefore, dissent.