GRIEVANCE ADMINISTRATOR v FRIED

Docket No. 105562. Decided November 18, 1997. On application by the
    petitioner for leave to appeal, the Supreme Court, in lieu of grant-
    ing leave, reversed the judgments of the Attorney Discipline Board
    and the hearing panel, and remanded the case to the hearing panel
    for further proceedings.

The Attorney Grievance Administrator filed a formal complaint with
    the Attorney Grievance Board against Harold S. Fried, Charles J.
    Golden, and James J. Rostash, alleging misconduct in conspiring to
    improperly affect the judicial assignment of cases. The administra-
    tor further alleged that the respondents participated in a scheme to
    initiate or accept associations as co-counsel to obtain the recusal
    of two circuit court judges by selling, not their professional ser-
    vices, but their familial relationships in violation of MCR 9.104. A
    hearing panel granted summary disposition for the respondents,
    finding that the conduct was not clearly a violation of the discipli-
    nary rules. The Attorney Discipline Board affirmed. The Grievance
    Administrator seeks leave to appeal.

    In a unanimous opinion per curiam, the Supreme Court *held*:

    The complaint filed by the Grievance Administrator states a
    claim on which relief can be granted.

    It is unethical for a lawyer to tamper with the court system or to
    arrange disqualifications, selling the lawyer's family relationships
    rather than professional services. A lawyer who joins a case as co-
    counsel, whose principal activity on the case is to provide recusal,
    is subject to discipline.

    Reversed and remanded.

*Philip J. Thomas*, Grievance Administrator, and
*Richard L. Cunningham*, Associate Counsel, for the
plaintiff-appellant.

*Colista, Adams & Palmer, P.C.* (by *F. Phillip
Colista* and *Elizabeth L. Sokol*), for respondent-
appellee Fried.

*Nearpass & Hudson, P.C.* (by *Leslie J. Nearpass*), for respondent-appellee Golden.

*Kenneth M. Mogill* for respondent-appellee Rostash.

PER CURIAM. The Grievance Administrator seeks to discipline several lawyers for taking improper steps to obtain the recusal of two circuit judges. A hearing panel granted summary disposition in favor of the lawyers, and the Attorney Discipline Board affirmed. We reverse the judgment of summary disposition, and remand this case to the hearing panel for further proceedings.

I

In a formal complaint, the Grievance Administrator alleges misconduct on the part of respondents Harold S. Fried, Charles J. Golden, and James J. Rostash.[1] Mr. Fried maintains a law office in Oakland County. Messrs. Golden and Rostash have offices in Monroe County.

During the time in question, the three judges of the Monroe Circuit Court were James J. Kelley,[2] William F. LaVoy, and Daniel L. Sullivan.[3] The Grievance Administrator alleges that Judge Kelley and Judge

---

[1] The Grievance Administrator filed a formal complaint in July 1993. Early proceedings led to the dismissal of some of the charges in the original complaint, and the case is currently proceeding on the basis of an October 1994 amended formal complaint. Because the case has yet to be tried and the present appeal concerns the propriety of a summary disposition under MCR 2.116(C)(8), we take as true the facts alleged in the amended complaint.

[2] Judge Kelley retired at the end of his term in 1988. He was replaced January 1, 1989 by Judge Michael W. LaBeau.

[3] Judge Sullivan has also retired. His successor is Judge Joseph A. Costello, Jr., who took office January 1, 1997.

LaVoy had a reputation within the local legal community of being tough sentencing judges, while Judge Sullivan had the reputation of being somewhat more lenient.

Mr. Golden is Judge Kelley's first cousin—Mr. Golden's father is the brother of Judge Kelley's mother. Mr. Rostash is Judge LaVoy's brother-in-law—Judge LaVoy is married to Mr. Rostash's sister. These relationships are close enough to require judicial disqualification under MCR 2.003(B)(6)(b).[4] Further, Administrative Order No. 1979-1 of the Monroe Circuit Court provided for the automatic disqualification of Judge Kelley from every case in which Mr. Golden appeared as attorney for a party.

In Count I of the complaint, the Grievance Administrator alleged that the three respondents conspired "to improperly affect the judicial assignment of criminal cases" by participating "in a scheme to initiate or accept associations as co-counsel by [Mr. Golden] so as to take advantage of the perpetual disqualification of [Judge Kelley]." The complaint listed twenty-four Monroe Circuit Court criminal cases in which this occurred.

In Count II, the Grievance Administrator similarly alleged a conspiracy by the three to obtain the disqualification of Judge LaVoy by having Mr. Rostash appear as co-counsel. Thirty-nine Monroe Circuit Court criminal cases were listed in Count II.

In Count III, the Grievance Administrator alleged that, in yet another criminal case, Mr. Golden was

---

[4] The facts in this case extend back to the mid-1970s, before the promulgation of the Michigan Court Rules of 1985. Prior versions of the pertinent paragraph include MCR 2.003(B)(5) as promulgated in 1985, and GCR 1963, 912.2(a)(5).

retained to represent a defendant whose case had been assigned to Judge LaVoy. Mr. Golden advised the defendant and his family to retain Mr. Rostash "for the specific purpose of causing Judge LaVoy's disqualification." It is alleged that Mr. Noble and his family retained Mr. Rostash "for the sum of $1,000, for the specific purpose of [gaining Judge LaVoy's disqualification]."

Count IV concerned a postdivorce custody dispute in Monroe Circuit Court. The mother consulted Mr. Golden, telling him that she did not like Judge LaVoy, to whom the case was assigned. Mr. Golden advised her that she "could have her case transferred from the docket of Judge LaVoy to another judge simply by hiring [Mr. Rostash] to represent her in the matter." The mother then retained Mr. Rostash, telling him that she was doing so for the purpose of getting her case assigned to a different judge. Such a transfer did occur. The Grievance Administrator thus alleges that Messrs. Golden and Rostash referred and accepted this custody matter "for the specific purpose of causing the disqualification of Judge LaVoy and the reassignment of the matter to another judge."

Count V of the complaint concerns a criminal case that was assigned to Judge Kelley. At the time of the assignment, the defendant was represented by counsel. Mr. Golden filed an appearance as co-counsel, with the result that Judge Kelley disqualified himself. The case was then assigned to Judge LaVoy, at which point Mr. Rostash filed an appearance as co-counsel. Judge LaVoy disqualified himself, and the case went to Judge Sullivan. Shortly after the case was assigned to Judge Sullivan, the defendant offered a plea, and received a probationary sentence. The Grievance

Administrator says that Messrs. Golden and Rostash referred and accepted representation in that case "for the specific purpose of causing the disqualification of Judges Kelley and LaVoy and the reassignment of the matter to another judge."

The Grievance Administrator alleged that, through these actions, the respondents violated various provisions of the Michigan Court Rules, the Michigan Rules of Professional Conduct, and the Michigan Code of Professional Responsibility.[5] However, many of these provisions are either inapplicable or can fairly be subsumed within the Grievance Administrator's principal allegation, which is that the three lawyers violated MCR 9.104.[6] This rule prohibits:

> (1) conduct prejudicial to the proper administration of justice;
>
> (2) conduct that exposes the legal profession or the courts to obloquy, contempt, censure, or reproach; [or]
>
> (3) conduct that is contrary to justice, ethics, honesty, or good morals[.]

II

The respondents moved for summary disposition, and the hearing panel granted their motion.[7] MCR 2.116(C)(8). The hearing panel explained:

---

[5] The Code of Professional Responsibility was replaced by the Rules of Professional Conduct on October 1, 1988.

[6] The previous provision was GCR 1963, 953.

[7] In the past, questions have arisen with regard to the authority of a hearing panel to grant summary disposition under MCR 2.116. See, e.g., *Grievance Administrator v Attorney Discipline Bd*, 539 NW2d 505 (Mich, 1995), *Grievance Administrator v Attorney Discipline Bd*, 543 NW2d 309 (Mich, 1995). However, no such issue has been raised in this appeal.

It is well established that attorney disciplinary proceedings are quasi criminal in nature. [*State Bar*] *Grievance Administrator v Freid*, 388 Mich 711 [202 NW2d 692] (1972). Respondent in such a quasi criminal proceeding is entitled to the right of fair notice and/or warning. *State Bar v Freid, supra.* In order for conduct to serve as the basis for an ethical violation, it must be clearly proscribed. *Matter of Miles A. Jaffa* [sic], ADB, Case No. 90-154-GA (Board Opinion 8-20-93). In that Board decision, it was noted

"We believe that a finding of misconduct must be based upon conduct prohibited in the applicable rules, not conduct looked upon with suspicion or disfavor."

At the time that the Respondents were alleged to have engaged in this conduct, there was no clear proscription against it. In point of fact, it has been argued that the Respondent's conduct is no different than the conduct of other attorneys who associate themselves with other counsel who have a personal relationship with the judge in the hopes that the association will affect the outcome of their case. While the Hearing Panel members look with suspicion and disfavor on the conduct alleged by the Grievance Administrator, it is the opinion of the Panel members that said conduct was not clearly a violation of the disciplinary rules as claimed by the Grievance Administrator.

The Attorney Discipline Board affirmed. Stating its agreement with the quoted passage from the panel's opinion, the ADB similarly came to rest on the absence of a specific prohibition against the alleged conduct. In this regard, the board stated:

This case presents potentially difficult questions as to the specificity with which the ethical constraints applicable to an attorney's conduct must be framed. Of the possible bases of misconduct alleged, we find colorable only the claim that this conduct is "prejudicial to the administration of justice." Many have debated the wisdom of such generality in the formulation of a standard of conduct. However, the standard remains in place in Michigan and in other states which have adopted Rule 8.4(d) of the Model Rules

of Professional Conduct. While the rule is designedly a "catchall" provision, this breadth does not allow for the discipline of all types of attorney conduct viewed with suspicion and disfavor. Rather, the better view limits the sweep of this rule to "violations of well understood norms and conventions of practice." 2 Hazard & Hodes, The Law of Lawyering, § 8.4:501, p 957. Also compare *In re Ruffalo*, 390 US [544], 556; 88 S Ct 1222, 1229; 20 L Ed 2d 117 (1968) (concurring opinion of Justice White) (discipline should not rest upon a "determination after the fact that conduct is unethical if responsible attorneys would differ in appraising the propriety of that conduct").

\* \* \*

We understand that every type of conduct giving rise to discipline cannot be anticipated and defined with specificity in a lawyer code. However, we also recognize that these respondents are caught in a clash between the obligation to zealously represent their clients despite personal inconvenience or disagreement with the client's objectives and the obligation to refrain from conduct prejudicial to the administration of justice as that obligation is interpreted by the Grievance Administrator. Many or perhaps most of the finest members of the bar would probably have nothing to do with the relatively blatant conduct alleged in the complaint. But, it is by no means clear that all reasonable practitioners would conclude that such or similar conduct was "prejudicial to the administration of justice" rather than the aggressive but permissible pursuit of "whatever lawful and ethical measures are required to vindicate a client's cause or endeavor." Comment, MRPC 1.3. Accordingly, we must be cautious not to read a broad rule too broadly and unfairly impose discipline where the conduct could stem from an attempt to comply with another, equally important, duty. As our Supreme Court remarked in another context:

"There are a large number of gray areas in the law. When a question is doubtful, the lawyer's obligation to his client permits him to assert the view of the law most favorable to his client's position." [*State Bar v Corace*, 390 Mich 419, 434; 213 NW2d 124 (1973).]

As members of the public and of the bar, we find it extremely distasteful that a lawyer would trade upon his or her status with respect to a sitting judge under the circumstances alleged here. Perhaps there should be a rule prohibiting a lawyer's acceptance of employment for the sole purpose of disqualifying a judge. However, we do not find that the conduct alleged by petitioner clearly constitutes a violation of a well understood practice norm or convention. Accordingly, we affirm the panel's order of dismissal.

Two members of the ADB dissented. They noted that one federal jurisdiction has said that an attempt to force recusal "doubtless disrupts the proper functioning of the judicial system and may be disciplined." *Standing Committee on Discipline of the United States Dist Court for the Central Dist of California v Yagman*, 55 F3d 1430, 1443 (CA 9, 1995).[8] The dissenters continued:

We would also find that petitioner has stated a claim that respondents' conduct exposes the legal profession to obloquy, contempt, censure, and reproach. MCR 9.104(2). The hearing panel viewed respondents' alleged conduct with suspicion and disfavor. We are convinced that the public would view such conduct as "case fixing" of a sort—and with some justification. In one of the counts against respondents Rostash and Golden only, it is alleged that an attorney represented a criminal client who initially drew Judge Kelley. Respondent Golden allegedly filed an appearance as co-counsel. It is further claimed that the case was reassigned to Judge LaVoy, at which point respondent Rostash filed an appearance. Finally, according to the complaint, the case went to Judge Sullivan, and the client received probation.

---

[8] *Yagman* was a complex dispute in which disciplinary questions were mingled with issues regarding the right of free speech under the First Amendment. The Ninth Circuit set aside a two-year suspension that had been imposed on Mr. Yagman for his vigorous criticism of a particular United States district judge.

Elementary principles of fairness have led to the adoption of a blind draw system for assigning cases in this state. MCR 8.111(B). Those same principles dictate that the process for assigning cases should not be interfered with absent good reason. These respondents are accused by the Administrator of enabling persons coming before the court to "purchase the assignment of a particular judge to decide issues in [their] case[s]." We agree that such conduct exposes the courts and the legal system to obloquy, contempt, censure, or reproach.

The Grievance Administrator has applied to this Court for leave to appeal.

### III

The ADB majority says that the respondents "are caught in a clash between the obligation to zealously represent their clients despite personal inconvenience or disagreement with the client's objectives and the obligation to refrain from conduct prejudicial to the administration of justice as that obligation is interpreted by the Grievance Administrator."

However, this is not a case about the ethical conflicts that may arise during the course of representation. This is a case about whether a lawyer should enter a case at all, and about whether it is misconduct to traffic in familial relationships that require judicial disqualification. The "clash" described by the ADBmajority is possible, but can arise only after a lawyer has agreed to represent the client, and thus has undertaken the duty of zealous representation. Ordinarily, no such conflict would exist at the time the lawyer is considering whether to enter a case.[9]

---

[9] Of course, a lawyer who is already involved in a case could face such a dilemma, trying to decide whether to employ a person such as Mr. Golden or Mr. Rostash as co-counsel, in order to gain a disqualification.

In his amended complaint, the Grievance Administrator alleges "a scheme to initiate or accept associations as co-counsel by [all three respondents] so as to take advantage of the perpetual disqualification of [Judge Kelley and Judge LaVoy]." Elsewhere in the complaint, the Grievance Administrator alleges that Messrs. Golden and Rostash referred and accepted cases "for the specific purpose of causing the disqualification." As the ADB majority correctly observes, this is conduct that a majority of lawyers would find offensive on its face.[10]

The ADB correctly observes that there are a variety of *permissible* steps that have a degree of similarity to the charged conduct. For instance, a lawyer may file a motion for change of venue that recites legal grounds, but is motivated by a desire to move the case to a jurisdiction where the lawyer believes success is more likely. A lawyer may accept employment and be brought into a case because the client (or an attorney already involved in the case) believes the lawyer has a record of success in appearances against an opposing lawyer, or before a particular judge.[11]

---

However, such a lawyer (including Mr. Fried) would be bound by the principles we set forth in this opinion.

[10] Indeed, informal ethics opinion JI-44, issued November 1, 1991, by the State Bar states:

> With regard to the conduct of lawyers who may take advantage of a "perpetual disqualification" by associating as co-counsel or referring cases to the targeted lawyer, such association or referral, when instigated with an eye toward affecting judicial assignments, is improper . . . .
>
> Both the lawyer seeking the association or offering the referral, and the targeted lawyer would be violating MRPC 8.4(c)[14] by participating in the scheme.

[11] A lawyer may not, however, state or imply an ability to exercise improper influence over a court or judge. MRPC 8.4(d).

Indeed, a lawyer can accept employment even if the client's subjective motive is one that the lawyer would be loathe to share, such as an explicit desire to avoid lawyers of one gender or the other.

The situations recounted in the preceding paragraph are fundamentally different, both in degree and in kind, from the conduct alleged in the present complaint. Without regard to the subjective motivation of the participants, those situations involve a lawyer actually practicing law—seeking to advance the client's interests through the words and actions that are customary in the profession. In the instant case, the Grievance Administrator charges that the respondents were selling, not their professional services, but their familial relationships.[12]

The court rules prohibit:

> (1) conduct prejudicial to the proper administration of justice;
>
> (2) conduct that exposes the legal profession or the courts to obloquy, contempt, censure, or reproach; [or]
>
> (3) conduct that is contrary to justice, ethics, honesty, or good morals[.] [MCR 9.104.]

The alleged conduct falls squarely within these provisions. It is prejudicial to the administration of justice, because it is an undue interference with the proper assignment of cases under MCR 8.111.[13]

---

[12] In his brief to this Court, the Grievance Administrator writes, "The attorney fee paid to the co-counsel was really nothing more than a charge for getting the case before a preferred judge."

[13] The respondents point out that they did not affect the initial assignment of a case to a judge. We are invited to contrast the conduct discussed in *Grievance Administrator v August,* 438 Mich 296; 475 NW2d 256 (1991); *In re Reinstatement of August,* 441 Mich 1207 (1993). It is true that the *August* situation was worse, involving corruption of a court, but

The alleged conduct surely exposes the legal profession and the courts to contempt and ridicule—no reasonable person would approve a system in which one can obtain a more lenient judge (and, presumably, a more lenient sentence) in a criminal case by paying $1,000 to a judge's relative.

The alleged conduct is contrary to justice, ethics, honesty, and good morals. It is wrong. Thus the ADB majority properly concluded that "[m]any or perhaps most of the finest members of the bar would probably have nothing to do with the relatively blatant conduct alleged in the complaint."

IV

The question before us today is simply whether the Grievance Administrator has stated a claim on which relief can be granted. He has. The fact that proof problems may arise does not alter that conclusion.

It is unethical conduct for a lawyer to tamper with the court system or to arrange disqualifications, selling the lawyer's family relationship rather than professional services. A lawyer who joins a case as co-counsel, and whose principal activity on the case is to provide the recusal, is certainly subject to discipline.

On the other hand, the rules do not prohibit a lawyer from taking a case that might lead to a recusal. Mr. Golden and Mr. Rostash are not precluded from practicing law in the Monroe Circuit Court. The Grievance Administrator alleges that there are sixty-six cases in which the respondents acted improperly to gain recusals. To the extent that these are cases in

---

the effect on the proper assignment of cases was, in the end, not dissimilar.

which Mr. Golden or Mr. Rostash appeared as lawyers and were substantially involved in the representation of the client, then the recusal was an unavoidable result of the rules established to avoid conflicts of interest.

V

An appearance filed principally to obtain the recusal (or de minimis activity as co-counsel to a lawyer who is handling the case, with the co-counsel designation serving principally to obtain the recusal) is a ground for discipline. The complaint filed by the Grievance Administrator states a claim on which relief can be granted. Accordingly, we reverse the judgments of the Attorney Discipline Board and of the hearing panel, and we remand this case to the hearing panel for further proceedings.[14] MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred.

---

[14] We reverse a summary disposition under MCR 2.116(C)(8). At this stage, we do not foreclose the respondents from filing a motion under MCR 2.116(C)(10). But see footnote 7.