DONALD W. LYDDON, SR., Plaintiff-Appellee, *v.* ROBERT J. SHAW *et al.*, Defendants-Appellants.

Second District   No. 77-268

Opinion filed January 23, 1978.

Bruce C. Erickson, of Gilbert, Powers, Mateer & Erickson, and Rolland J. McFarland, both of Rockford, for appellants.

Richard R. Haldeman, of Williams, McCarthy, Kinley, Rudy & Picha, of Rockford, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Is an attorney who files a medical malpractice action against a physician, without attempting to determine whether or not there is any evidence supportive of the claim, liable in turn to the physician for legal

malpractice? The case at bar presents this question, and a number of others, which are of first impression.

The case is before us on an interlocutory appeal under Supreme Court Rule 308 (Interlocutory Appeals by Permission) (Ill. Rev. Stat. 1975, ch. 110A, par. 308), from the trial court's denial of defendant Robert J. Shaw's motion to dismiss the plaintiff's complaint. The plaintiff, Dr. Donald W. Lyddon, Sr., is a board certified orthopedic surgeon on the staff of Swedish American Hospital. His three-count complaint alleged that on January 9, 1974, defendant Douglas R. Trembath, entered the emergency room of the hospital, complaining that he had twisted his ankle playing basketball. Dr. Lyddon was the attending physician in the emergency room; he examined Trembath and caused two X rays to be taken. The complaint states that Dr. Lyddon read the X ray films, "correctly and properly interpreted them as normal except for soft tissue swelling around the right ankle," and diagnosed Trembath's condition as a sprained ankle. According to the complaint, Dr. Lyddon applied an ice pack and an elastic bandage, and instructed Trembath to seek further medical attention, if the symptoms persisted for more than seven to ten days; that was the "first, last, and only occasion" that Dr. Lyddon treated or examined Trembath, and he is alleged to have exercised "at least that degree of skill and care ordinarily possessed by other physicians."

The rest of the factual allegations of the complaint involved the other defendant, attorney Robert J. Shaw. The complaint states that on January 23, 1975, Trembath retained attorney Shaw to represent him in a claim against Dr. Lyddon for alleged negligent care and treatment of Trembath on January 9, 1974. It says that although Shaw and Trembath had an adequate opportunity to obtain all hospital and medical records relating to the care and treatment of Trembath, Shaw and Trembath filed a complaint seeking an award of $100,000 in damages for medical malpractice against Dr. Lyddon, without examining the relevant X rays and records, or obtaining the opinion of a qualified physician as to whether or not Dr. Lyddon had been negligent. The complaint fails to plead the outcome of the medical malpractice action against Dr. Lyddon, but states that as a direct and proximate result of Shaw and Trembath filing the lawsuit "without reasonable cause" to believe that Dr. Lyddon had been negligent, Dr. Lyddon,

> "* * * has been damaged in that his reputation as an orthopedic surgeon has been attacked; he has suffered mental anguish; he has been required to defend his reputation as a skillful orthopedic surgeon from the queries of patients, fellow practioneers and business acquaintances; he has been required to take time away from his medical practice to devote time to his own defense in the above-described litigation, and he has, or will be, required to pay

increased premiums for his medical malpractice insurance regardless of the outcome of the above-described litigation."

Each of the three counts of the complaint presents a slightly different theory of recovery, based upon these allegations. Count I is premised upon the theory that Shaw and Trembath had "a duty to refrain from wilfully and wantonly bringing suit against him and involving him in litigation without having reasonable cause to believe" that Dr. Lyddon had been guilty of malpractice. Counts II and III are directed solely against attorney Shaw. Count II is based upon the Illinois barratry statute,[1] and Count III asserts that attorney Shaw, as an officer of the court, had a duty not only to his client, but also to Dr. Lyddon, to refrain from filing the lawsuit without "any reasonable evidence to support the allegations of medical incompetence," and that by filing such an action without reasonable cause, and "continuing to maintain the litigation," Shaw failed to exercise "that degree of skill or care required by an attorney-at-law * * * to perform his professional duties and obligations in a professional manner." All three counts contained a prayer for unspecified "actual" and punitive damages.

On appeal, attorney Shaw's argument (Trembath has not filed a brief) is, in sum, that the only cause of action recognized by the courts of this State allowing a recovery for the wrongful filing of a lawsuit is that of malicious prosecution, that Dr. Lyddon's complaint fails to state a cause of action for malicious prosecution, and that the trial court therefore erred when it denied Shaw's motion to dismiss the complaint.

■■■ Under Illinois law, a complaint for malicious prosecution must allege five distinct elements: (1) institution and prosecution of judicial proceedings by the defendant; (2) lack of probable cause for those proceedings; (3) malice in instituting the proceedings; (4) termination of the prior cause in plaintiff's favor, and (5) suffering by plaintiff of some special injury, beyond the anxiety, loss of time, attorney fees, and necessity for defending one's reputation, which are an unfortunate incident of many (if not most) lawsuits. (*E.g., Madda v. Reliance Insurance Co.* (1977), 53 Ill. App. 3d 67, 70.) Here, it is unquestioned that Dr. Lyddon's complaint fails to allege the element of the favorable termination of the prior proceeding. The only allegation of special damages is the allegation that he "has, or will be, required to pay increased premiums for his medical malpractice insurance regardless of the outcome of" the litigation. This allegation, however, is in the nature of

---

[1] At the time in question the statute read as follows:

"Barratry—Violations] §26. If any person shall wickedly and willfully excite and stir up any suits or quarrels betwen the people of this state, either at law or otherwise, with a view to promote strife and contention, he shall be deemed guilty of the petty offense of common barratry; and if he be an attorney or counselor at law, he shall be suspended from the practice of his profession, for any time not exceeding six months." (Ill. Rev. Stat. 1975, ch. 13, par. 21.)

a conclusion of the pleader, and no facts are alleged demonstrating a causal connection between the allegedly frivolous lawsuit and any actual or potential increase in Dr. Lyddon's insurance premiums. There has been no allegation whatsoever of malice on the part of Trembath; as to attorney Shaw, the element of malice may reasonably be inferred from the allegation that Shaw knew the action against Dr. Lyddon was without merit, but intended to harass Dr. Lyddon and "force a compromise settlement." In any event, Dr. Lyddon has conceded that the complaint does not state a cause of action for malicious prosecution.[2]

Instead, Dr. Lyddon has premised his complaint on a more general, and familiar concept of tort liability: "duty, violation, damage, and proximate cause." In Dr. Lyddon's view, attorney Shaw's duty was established not only by the barratry statute, but also by ethical precepts prohibiting an attorney from filing a suit on behalf of a client "* * * when he knows or when it is obvious that such action would serve merely to harrass or maliciously injure another." (Disciplinary Rule 7—102(A)(1), Illinois Code of Professional Responsibility (1970).) Dr. Lyddon cites no express basis for Trembath's alleged duty to refrain from "wilfully and wantonly" filing a baseless lawsuit against him, apparently attempting to base Trembath's liability upon the general concept of foreseeable harm. Dr. Lyddon goes on to argue that the filing of a malpractice action against him, without reasonable cause, constituted a clear violation of the duty owed him by Shaw and Trembath and was therefore actionable, regardless of whether or not the conduct fell within the comparatively narrow ambit of a cause of action for malicious prosecution, since article I, section 12 of the Constitution of the State of Illinois (1970) provides that: "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. * * *".

■■ We hold at the outset that the failure to plead the outcome of the malpractice action against Dr. Lyddon would constitute a fatal defect in Dr. Lyddon's complaint, even if he were correct in his contention that malicious prosecution is not the sole cause of action available to a party who is put to the expense and vexation of defending a baseless lawsuit. The considerations underlying the requirement that a complaint for malicious prosecution plead the favorable outcome of the prior cause, are, in effect, broader than the rule itself. As the court observed in *Babb v. Superior Court* (1971), 3 Cal.3d 841, 479 P.2d 379, 92 Cal. Rptr. 179, the filing of an action seeking damages for the wrongful filing of a

---

[2] Similarly, since the complaint fails to allege that Trembath or Shaw made an improper use of process (*i.e.*, a use not proper in the regular course of proceedings), the complaint failed to state a cause of action for abuse of process. *Madda v. Reliance Insurance Co.*, (1977), 53 Ill. App. 3d 67, 71.

malpractice suit, prior to the termination of the malpractice action, would tend to drive a wedge between the malpractice plaintiff and his attorney; the attorney may be diverted from properly preparing the client's malpractice case by the necessity for readying his own defense to the physician's countersuit, and may, in some cases, even be forced to withdraw from the malpractice action. Further, allowing the physician's "wrongful litigation" suit to be maintained prior to the termination of the malpractice action against the physician, would deprive the court hearing the physician's claim of perhaps the best evidence on the question of whether there was any reasonable basis for the malpractice action, *e.g.*, the transcript of the evidence adduced in support of the malpractice claim. Such a holding would carry with it problems of inconsistent findings and verdicts, and of collateral estoppel, which would be wholly avoided if the physician were required to plead the favorable termination of the malpractice action as part of his cause of action for the wrongful filing and prosecution of the malpractice claim. To allow Dr. Lyddon's complaint to stand in spite of his failure to plead the disposition of the prior suit against him, would be to condone a kind of collateral, pre-emptive attack to determine the merits of a pending cause; such a procedure would not comport with the best interests of sound judicial administration (*cf., Krebs v. Mini* (1977), 53 Ill. App. 3d 787), whether the complaint be in the form of a complaint for malicious prosecution, or of any other cause of action. Dr. Lyddon's suit was clearly premature, and the trial court would have erred in failing to grant Shaw's motion to dismiss on this ground alone, even if the complaint had otherwise stated a valid cause of action.

Counsel, during oral argument, advised this court that the malpractice suit against Dr. Lyddon was dismissed by the trial court for Trembath's failure to comply with certain discovery orders, sometime after Dr. Lyddon filed his complaint in the instant case. It is clear that upon remand, Dr. Lyddon would undoubtedly be able to secure leave of court to amend his complaint so as to add an allegation that the prior cause terminated in his favor. (See Ill. Rev. Stat. 1975, ch. 110, par. 45(4); *Lee v. Conroy* (1973), 13 Ill. App. 3d 694.) Since the case comes before us on an interlocutory appeal, interests of judicial economy require that we explore Dr. Lyddon's assertion that malicious prosecution is not the only cause of action available to a physician who has been forced to defend against a frivolous or baseless malpractice suit.

Medical malpractice suits were once something of a rarity. Today, the cost and number of such claims have increased to the scope of a national problem. It has been suggested that a significant percentage of malpractice claims lack either a legal or a factual basis, and there has been increasing interest in the use of a countersuit against the former patient

and his attorney as a device for decreasing the number of meritless malpractice suits. (See Alder, *Malicious Prosecution Suits as Counterbalance to Medical Malpractice Suits*, 21 Clev. L. Rev. 51 (1972); comment, *Malicious Prosecution: An Effective Attack on Spurious Medical Malpractice Claims?* 26 Case W. Res. L. Rev. 653 (1976); Smith, *Medical malpractice: the countersuit fad*, 12 Trial 44 (Dec. 1976); Note, *Physician Countersuits: Malicious Prosecution, Defamation and Abuse of Process as Remedies for Meritless Medical Malpractice Suits*, 45 Cinc. L. Rev. 604 (1976); Greiser, *Attorney Liability for Malicious Prosecution and Legal Malpractice: Do they Overlap?* 8 Pac. L.J. 897 (1977).) In 1976 the State legislature, reacting in part to the problem of frivolous malpractice suits, amended section 41 of the Illinois Civil Practice Act, which subjects a party pleading false allegations to the payment of attorney fees, by eliminating the former requirement that the allegations be shown to have been made in bad faith, and substituting a requirement for a lesser showing that the allegations were made "without reasonable cause." (Ill. Rev. Stat. 1975, ch. 110, par. 41; Jenner & Martin, Supplement to Historical & Practice Notes, Ill. Ann. Stat. ch. 110, par. 41 (Smith-Hurd Supp. 1977).) However, in spite of the increasing scope of the malpractice problem and the growing interest in curbing frivolous malpractice suits, courts in reported cases have refused to enlarge the tort remedies available to physicians, holding that the physicians' remedy for the wrongful filing of a medical malpractice action is limited to a cause of action for malicious prosecution or abuse of process. *Drago v. Buonagurio* (1977), 391 N.Y.S. 2d 61, 89 Misc. 2d 171; *Spencer v. Burglass* (La. App. 1976), 337 So. 2d 596; *Wolfe v. Arroyo* (Tex. Civ. App. 1976), 543 S.W.2d 11.

■■■ No court of review in this State has yet passed upon the precise point presented here. Dr. Lyddon urges that there are important considerations of public policy, chiefly involving the increasing cost of medical malpractice insurance, which mandate a holding that malicious prosecution is not the sole tort remedy available to him. While we acknowledge the seriousness of the medical malpractice problem, we believe there is a more basic and important consideration of public policy which prohibits any enlargement of the potential tort liability incurred by those who file even groundless lawsuits. Free access to the courts as a means of settling private claims or disputes is a fundamental component of our judicial system, and "* * * courts should be open to litigants for the settlement of their rights without fear of prosecution for calling upon the courts to determine such rights." (*Schwartz v. Schwartz* (1937), 366 Ill. 247, 250.) On this ground, it has been held that actions for malicious prosecution are not favored by the law (*Schwartz v. Schwartz; Elgin Lumber & Supply Co. v. Malenius* (1967), 90 Ill. App. 2d 90) and the

courts of this State have, in general, strictly construed the requirements for this cause of action. (See *Madda v. Reliance Insurance Co.* (1977), 53 Ill. App. 3d 67; *Alswang v. Claybon* (1976), 40 Ill. App. 3d 147; *Siegel v. City of Chicago* (1970), 127 Ill. App. 2d 84; *Franklin v. Grossinger Motor Sales, Inc.*, (1970), 122 Ill. App. 2d 391, *cert. denied* (1971), 403 U.S. 911, 29 L. Ed. 2d 688, 91 S. Ct. 2207). The "obvious public interest" in affording every citizen "the utmost freedom of access to the courts" has also inspired the rule in the law of defamation that anything said by litigants or counsel relating to the matter at issue is privileged, even though this privilege acts to deprive parties, in most cases, of any civil remedy for defamatory statements made in the course of such judicial proceedings. (Prosser, Torts §114, at 778 (4th ed. 1971); see also, *e.g.*, *Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613.) This same public interest demands that we reject any effort to extend the tort liability for the wrongful filing of a lawsuit beyond the ambit of an action for malicious prosecution or abuse of process. These considerations apply with equal force, not only to a party litigant, but to his counsel, (see *Spencer v. Burglass* (1976), La. App., 337 S.2d 596), since a litigant's free access to the courts would frequently be of little value to him if he were denied counsel of his choice by a rule which rendered attorneys fearful of being held liable as insurers of the merits of their client's case, and therefore unwilling to undertake representation in close or difficult matters. The very purpose of a court of law is to determine whether an action filed by a party has merit and we refuse to recognize a rule which would render a litigant and his attorney liable in tort for negligently (or even, willfully and wantonly) failing to determine in advance that which, ultimately, only the courts could determine. The trial court therefore erred in failing to grant Shaw's motion to strike counts I and III of Dr. Lyddon's complaint.

■■ The same considerations compel a holding that the legislature, in enacting the barratry statute, could not have intended to create the civil remedy urged by Dr. Lyddon, which was unknown at common law. (14 Am. Jur. 2d *Champerty and Maintenance* §1 *et seq.* (1964).) Further, it is doubtful that the alleged conduct of attorney Shaw constituted the offence of barratry. At common law, at least three acts of a barratrous nature were necessary to constitute the offense, and the legislature seems to have included this requirement for multiple acts in the statute, which punishes for the "stirring up" of "*suits*" or "*quarrels*" being thus phrased in terms of multiple, rather than single acts. (See 14 Am. Jur. 2d *Champerty and Maintenance* §19 (1964); Perkins, Perkins on Criminal Law 523 (2d ed. 1969).) It is therefore clear that the trial court also erred in failing to grant the motion to strike count II of Dr. Lyddon's complaint.

■■ Finally, we reject the suggestion that the result which this court

has reached today deprives Dr. Lyddon of his right under article I, section 12 of the Illinois Constitution, to "a certain remedy in the laws for all injuries and wrongs * * *". This court has held that this section "does not mandate a specific form of remedy be provided plaintiff but only expresses the philosophy that some remedy be provided." (*Steffa v. Stanley* (1976), 39 Ill. App. 3d 915, 918.) Here, apart from the availability of an action for malicious prosecution or abuse of process, a party who is put to the defense of a groundless lawsuit has available the remedy of a motion in the original action for an award of attorney fees under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 41) and in an appropriate case may be instrumental in the institution of disciplinary proceedings against the offending attorney.

The trial court's order of May 19, 1977, denying the defendant's motion to dismiss the plaintiff's complaint is therefore reversed and remanded for the entry of an order dismissing the complaint of the plaintiff, Dr. Lyddon, and for such further proceedings as may be consistent with this opinion.

Reversed and remanded with directions.

SEIDENFELD and GUILD, JJ., concur.