SCHUNK v ZEFF & ZEFF, PC

Docket No. 43402. Submitted April 9, 1980, at Detroit.—Decided
September 9, 1981. Leave to appeal applied for.

Herbert D. Schunk, M.D., brought an action against Zeff & Zeff,
P.C., Gary C. Berger, and Diane Freilich for malicious prosecu-
tion and for negligence in their failure to investigate certain
clients' claims of malpractice prior to instituting suit. Defen-
dants moved for summary judgment as to the negligence count,
which motion was granted, Wayne Circuit Court, John D.
O'Hair, J. Plaintiff appeals. *Held:*

The trial court properly granted defendants' motion. Under
the current state of the law and the circumstances of the case
the attorneys did not owe a legal duty to their clients' adver-
sary, the breach of which would support a cause of action in
negligence.

Affirmed.

MacKenzie, J., dissented. She would hold that an attorney
may be liable in an action for negligence brought by a client's
adversary for breach of his duty to conduct a reasonable
investigation prior to instituting suit where it is reasonably
foreseeable that the breach of the duty would result in injury
to the adversary. She would reverse and remand.

OPINION OF THE COURT

1. ATTORNEY AND CLIENT — DUTY TO CLIENT — THIRD PARTIES —
NEGLIGENCE.

An attorney has a duty to be a zealous advocate, permitting him

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 7 Am Jur 2d, Attorneys at Law §§ 3-5, 120.
Attorney's liability, to one other than his immediate client, for
consequences of negligence in carrying out legal duties. 45 ALR3d
1181.
Attorney's liability for negligence in preparing and conducting
litigation. 45 ALR2d 5.

[2, 3] 7 Am Jur 2d, Attorneys at Law §§ 232, 233.
Liability of attorney acting for client, for false imprisonment or
malicious prosecution of third party. 27 ALR3d 1113.

[4] 7 Am Jur 2d, Attorneys at Law §§ 199, 200, 202.

[5] 7 Am Jur 2d, Attorneys at Law §§ 232-236.

to assert that view of the law most favorable to his client; a third party who is an adversary in a judicial proceeding is not an intended beneficiary of an attorney's performance of his duty to his client; thus, an attorney is not liable to third parties for the negligent performance of such duties because of the absence of a duty to the third party and the overriding public policy of free and unfettered access to courts by potential suitors.

2. ATTORNEY AND CLIENT — DUTY TO INVESTIGATE — THIRD PARTIES — MALICIOUS PROSECUTION — NEGLIGENCE.

Failure by an attorney to thoroughly investigate a client's claim to determine whether the claim is meritorious prior to the institution of a suit may give rise to a cause of action by an adverse party for malicious prosecution or abuse of process but will not give rise to a cause of action for negligence.

DISSENT BY MACKENZIE, J.

3. ATTORNEY AND CLIENT — DUTY TO INVESTIGATE — THIRD PARTIES — NEGLIGENCE.

*An attorney may be liable in an action for negligence brought by his client's adversary for breach of his duty to conduct a reasonable investigation of the merits of his client's claim prior to instituting suit where it is reasonably foreseeable that a breach of the duty would result in injury to the adversary.*

4. ATTORNEY AND CLIENT — DUTY TO CLIENT — THIRD PARTIES — DUTY TO INVESTIGATE — NEGLIGENCE — PROFESSIONAL RESPONSIBILITY — COURT RULES.

*An attorney, although required to represent his client zealously within the bounds of the law, must temper such zeal in fulfilling his obligation as an officer of the court to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm; this includes an affirmative obligation to conduct a reasonable investigation of the merits of a client's claim prior to the commencement of a suit (GCR 1963, 114.2, Code of Professional Responsibility and Canons, Canon 7, DR 7-102, EC 7-10).*

5. ATTORNEY AND CLIENT — THIRD PARTIES — NEGLIGENCE.

*An attorney, absent the existence of privity based on a contractual relationship, may be liable to someone other than a client where the law imposes a duty of care on the attorney with respect to such person, it is foreseeable that the person will be harmed by the attorney's negligence, and the person actually suffers harm as a result of the negligence.*

6. ATTORNEY AND CLIENT — DUTY TO CLIENT — THIRD PARTIES —
DUTY TO INVESTIGATE — NEGLIGENCE.

> *Negligence, as a matter of law, will not be predicated on conduct where a court determines that the social utility of the conduct is so great as to require full protection; however, a balance between the value of the conduct and the risk of harm which it creates should be struck, and the protection need not be absolute; and where the social utility, such as an attorney's zealous representation of a client, will not be sacrificed by a recognition of the attorney's concurrent obligation to the court and the public to conduct a reasonable investigation of the merits of his client's claim prior to the commencement of an action, a cause of action for failure by the attorney to fulfill this concurrent duty should not be barred.*

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Daniel G. Wyllie* and *Bowden V. Brown),* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Thomas M. O'Leary* and *Christine D. Oldani),* for defendant.

Before: DANHOF, C.J., and CYNAR and MAC-KENZIE, JJ.

CYNAR, J. Plaintiff appeals as of right from the grant of defendants' motion for summary judgment as to the negligence count of plaintiff's complaint, which summary judgment was certified as a final order. We affirm.

On August 24, 1973, defendant-attorney, Gary C. Berger, commenced a civil action in Wayne County Circuit Court in favor of his clients, Linda and Gerald Koras, against Suburban Radiology Associates, P.C., and Herbert Schunk, M.D. In the action, Mr. and Mrs. Koras sought damages because of Dr. Schunk's failure to diagnose an ectopic pregnancy from X-ray films taken of Mrs. Koras which were reviewed by Dr. Schunk. Mrs. Koras had been referred to Dr. Schunk for a hysterosalpingogram,

a a procedure whereby an opaque substance is introduced and an X-ray is taken of the patient's uterus, ovaries, and fallopian tubes. The procedure is intended to indicate the existence of an ectopic pregnancy when the opaque substance is not able to fully circulate due to an obstruction in the fallopian tube.

Dr. Schunk's review of Mrs. Koras' hysterosalpingogram on June 28, 1972, detected no ectopic pregnancy. On July 2, 1972, Linda Koras required surgery for a ruptured fallopian tube.

On August 25, 1976, a notice of discontinuance of the Koras medical malpractice action against Dr. Schunk was filed. This notice was signed by Dr. Schunk's and plaintiffs' attorneys. No settlement money was paid, nor were costs assessed.

On November 2, 1977, the instant cause of action was commenced. Dr. Schunk complains that defendants, in their representation of Mr. and Mrs. Koras in a malpractice action wherein Dr. Schunk was named as a defendant, breached various duties allegedly owing to Dr. Schunk. Plaintiff specifically complains of defendants' alleged failure to investigate the merits of the Koras claim prior to the commencement of the medical malpractice action against Dr. Schunk. The complaint was framed in two counts, negligence and malicious prosecution.

After the commencement of Dr. Schunk's action herein, defendants filed a motion for summary judgment. The trial court granted defendants' motion for summary judgment as to count I, or the negligence count of plaintiff's complaint, indicating that under the current state of the law an attorney does not owe a legal duty to his client's adversary, the breach of which would support a negligence action. The trial court denied defen-

dants' motion for summary judgment as to plaintiff's claim of malicious prosecution.

In affirming the trial court's grant of summary judgment on the negligence count, we rely on *Friedman v Dozorc,* 83 Mich App 429; 268 NW2d 673 (1978), *lv gtd* 405 Mich 823 (1979), and *Gasis v Schwartz,* 80 Mich App 600; 264 NW2d 76 (1978).

In *Friedman,* the Court noted that an attorney has a duty to be a zealous advocate. The lawyer's obligation to his client thus permits the lawyer to assert that view of the law most favorable to the client. Accordingly, the attorney is not to be liable in negligence to a third party.

This Court in *Friedman* cited other decisions addressing a factual situation similar to that in the case before us. The holding of those cases was that the attorney was not to be held liable to one other than the client. Free access to the courts was the rationale underlying the conclusion of those courts. Public policy demands that persons shall be entitled to resort to the courts for redress of wrongs; the law is intended to protect them when, in resorting to the courts, individuals act in good faith and upon reasonable grounds.

This Court in *Friedman* also commented that, notwithstanding the demise of the privity requirement, plaintiff must show the existence of a duty in order to recover. That question normally is to be resolved by the judge. Thus, it was decided that the trial court had acted properly in finding that the plaintiff had failed to state a claim of negligence.

In the case of *Gasis,* the plaintiff, a medical doctor named as a defendant in a medical malpractice action brought by the defendant-attorney's clients, sued the attorneys for negligence in the commencement of a medical malpractice ac-

tion. The defendants brought a motion for summary judgment based on the plaintiffs' failure to state a claim upon which relief could be granted. The trial court, in granting the defendant-attorney's motion, found that the attorneys owed no duty of care to the plaintiffs.

In affirming the decision of the trial court in that regard, this Court stated as follows:

"Plaintiffs allege, however, that the trial court erred in granting summary judgment to defendants Stanley Schwartz and Sommers, Schwartz, Silver, Schwartz, Tyler and Gordon, P.C. That claim, plaintiffs allege, was *not for malicious prosecution but for negligence.* Defendant attorneys, plaintiffs argue, have a duty to adverse parties not to institute lawsuits without first undertaking a thorough investigation to determine whether the action is meritorious, and failure so to investigate constitutes actionable negligence vis-à-vis the adverse parties.

"This novel theory has apparently not been ruled upon heretofore by an appellate court of this state. A similar claim was recently rejected, however, by the California Court of Appeals in *Norton v Hines,* 49 Cal App 3d 917; 123 Cal Rptr 237 (1975). The California court said, *Norton,* 49 Cal App 3d 917, 921:

" 'In the case at bar a former litigant is suing adverse counsel. Clearly, an adverse party is not an intended beneficiary of the adverse counsel's client. If a cause of action exists against attorneys for the reasons alleged here, it must be pleaded as an action for malicious prosecution. We see no reason to extend applicable law now found in cases involving attorneys and third parties when there is sound and recognized public policy for limiting the cause of action to malicious prosecution under the facts as pleaded by Norton.' " *Id.,* 602-603.

In addition to the Michigan cases cited herein, a number of other states have reached a similar result. The New York Court of Appeals in *Drago v*

*Buonaguiro,* 46 NY2d 778; 413 NYS2d 910; 386 NE2d 821 (1978), held that a doctor's complaint did not state a cause of action against the attorney in negligence.

The complaint in *O'Toole v Franklin,* 279 Or 513; 569 P2d 561 (1977), contained allegations that the defendant-attorneys had commenced a medical malpractice action against the plaintiff-physicians alleging that the physicians had improperly administered certain drugs to the attorneys' client. The second count of the physicians' complaint alleged that the attorneys had been negligent in not properly investigating the case and in not advising their client that he had no just claim against the plaintiffs. The trial court concluded that the physicians' complaint did not state a cause of action.

The finding of no duty was made by the court in *Hill v Willmott,* 561 SW2d 331 (Ky App, 1978). The issue addressed by that court was whether a former litigant can sustain an action based on the theory of negligence against the adverse party's attorney in a prior suit. Plaintiff in that case was a physician who had been sued for giving an incorrect diagnosis. The court examined the elements of a cause of action for negligence and found that the main flaw in the physician's reasoning lay in his assumption that a duty was owing from the attorneys to him:

"Applying the foregoing principles to the case at bar, it is readily apparent that Willmott did not owe the alleged duty urged by Hill nor was the appellant an intended beneficiary of Willmott's services. Willmott's alleged failure to investigate the facts and law prior to the filing of the suit in his name would have been material as to the question of 'probable cause' in a malicious prosecution action if such had been pleaded.

However, his alleged failure to investigate was not a duty owing to Hill and as such does not constitute a cause of action by him." *Id.,* 335.

In *Lyddon v Shaw,* 56 Ill App 3d 815; 372 NE2d 685 (1978), attorney Shaw was retained by defendant Trembath to bring a medical malpractice action against a surgeon. As a result of that medical malpractice action, the plaintiff-physician brought an action against both Shaw and Trembath stating that they had filed claims against him without first investigating the relevant X-rays and without first obtaining the opinion of a qualified physician. Plaintiff alleged causes of action pertaining to defendant's duty to refrain from bringing suit without having reasonable cause to believe that the action was tenable, defendant's failure to exercise the skill required of an attorney at law in filing and maintaining the lawsuit, and the attorney's alleged violation of the Illinois barratry statute.

Plaintiff cited no express basis for the patient's duty to refraim from willfully and wantonly filing baseless suits, but, in support of his cause of action against the attorney, plaintiff cited only the Disciplinary Rules of the Canons of Ethics. The *Lyddon* court refused to impose liability on the attorney on those grounds and stated as follows:

"However, in spite of the increasing scope of the malpractice problem and the growing interest in curbing frivolous malpractice suits, courts in reported cases have refused to enlarge the tort remedies available to physicians, holding that the physicians' remedy for the wrongful filing of a medical malpractice action is limited to a cause of action for malicious prosecution or abuse of process * * *.

"* * * While we acknowledge the seriousness of the medical malpractice problem, we believe there is a

more basic and important consideration of public policy which prohibits any enlargement of the potential tort liability incurred by those who file even groundless lawsuits. Free access to the courts as a means of settling private claims or disputes is a fundamental component of our judicial system, and '* * * courts should be open to litigants for the settlement of their rights without fear of prosecution for calling upon the courts to determine such rights.' * * * This same public interest demands that we reject any effort to extend the tort liability for the wrongful filing of a lawsuit beyond the ambit of an action for malicious prosecution or abuse of process. These considerations apply with equal force, not only to a party litigant, but to his counsel [citation omitted] since a litigant's free access to the courts would frequently be of little value to him if he were denied counsel of his choice by a rule which rendered attorneys fearful of being held liable as insurers of the merits of their client's case, and therefore unwilling to undertake representation in close or difficult matters. The very purpose of a court of law is to determine whether an action filed by a party has merit and we refuse to recognize a rule which would render a litigant and his attorney liable in tort for negligently (or even, willfully and wantonly) failing to determine in advance that which, ultimately, only the courts could determine." *Id.,* 821-822.

In *Pantone v Demos,* 59 Ill App 3d 328; 375 NE2d 480 (1978), the case involved an action by two doctors against an attorney for the latter's alleged wrongful naming of them as defendants in a medical malpractice action. The physicians sought to allege a cause of action entitling them to new legal remedies which they argued should be available to doctors whose livelihoods may be endangered by the filing of supposedly frivolous malpractice actions. The *Pantone* court cited *Lyddon* in reaffirming the public policy of free access to the courts. It concluded that there was no historical basis for the willful and wanton cause of action

proposed therein that the plaintiffs alleged: that the defendants owed them a duty to refrain from willfully and wantonly bringing suit against them without having reasonable cause to believe that they were guilty of medical malpractice. The court alluded to the overriding public policy of free and unfettered access to courts by potential suitors and said that such policy required rejection of the plaintiffs' position. As to the issue of whether an attorney could be held liable to a former adverse litigant for professional negligence, the court stated that the answer must be no:

"Establishment of such a negligence cause of action would clearly inhibit free access to the courts. * * * Even those courts which have liberalized the scope of an attorney's duty of care to include intended beneficiaries of the original attorney-client relationship have refused to recognize a duty under the facts of the instant case." *Id.,* 335. See also *Berlin v Nathan,* 64 Ill App 3d 940; 381 NE2d 1367 (1978).

A similar holding was reached by the court in *Bickel v Mackie,* 447 F Supp 1376 (ND Iowa, 1978). That case grew out of an unsuccessful medical malpractice action by defendant acting on the advice of his counsel. The medical malpractice suit was summarily dismissed, and plaintiff-physician brought a cause of action against the attorney alleging malicious prosecution, abuse of process and negligence. As to the negligence cause of action, the physician alleged that the patient's attorney had acted improperly in advising his client with regard to commencement and prosecution of the medical malpractice action and was thus liable to the physician for damages. However, the court refused to allow the physician's cause of action:

"However, in the present case there is no question of reliance of third parties who are adversaries in judicial proceedings. The attorney owes his primary and paramount duty to this client. The very nature of the adversary process precludes reliance by opposing parties. While it is true that the attorney owes a general duty to the judicial system, it is not the type of duty which translates into liability for negligence to an opposing party where there is no foreseeable reliance by that party on the attorney's conduct." *Id.,* 1381.

The court in *Brody v Ruby,* 267 NW2d 902 (Iowa, 1978), was cognizant of the public policy which encourages clients to solve their problems in the courts. In the physician's counter-suit involved there, the doctor alleged a right to recovery on account of defendants' alleged negligence. That court held that, absent special circumstances, an attorney will be held liable only to the client for the consequences of the attorney's professional negligence. The third party, in order to proceed successfully in a legal malpractice action, must be a direct and intended beneficiary of the lawyer's services. Where such a special relationship between the attorney and the third party is lacking, courts will refuse to impose liability based on legal malpractice.

In *Spencer v Burglass,* 337 So 2d 596 (La App, 1976), the plaintiff-physician sought damages against the defendant-attorney. The latter party had commenced an earlier medical malpractice action on behalf of his client against the doctor. The physician complained of the attorney's alleged failure to consult with any expert witnesses prior to trial, to refrain from filing frivolous suits having no basis in law or in fact, and to consult with witnesses prior to the filing of suit or trial. The court rejected the doctor's claim to a right to recover for the breach of any duty owed her.

Similarly, in *Norton v Hines,* 49 Cal App 3d 917; 123 Cal Rptr 237 (1975), the appellate court found the trial court to have acted properly when it dismissed the plaintiff's cause of action for professional negligence. Plaintiff in *Norton,* in a separate suit, had been an adversary of the defendant-attorney's client. In *Norton,* plaintiff claimed that the attorney owed a duty to him as a foreseeable third party to exercise reasonable care in advising the client to commence a lawsuit against the third person when the attorney knew that advice would cause the client to commence the suit and that the client lacked probable cause to sue. The court found that an adverse party clearly is not an intended beneficiary of the adverse counsel's client. Thus, if any cause of action exists against an adverse counsel, it might be an action for malicious prosecution, but certainly not for negligence. The court alluded to sound and recognized public policy reasons for not extending recovery to causes of action sounding in negligence.

Following the policy and case law discussed above, we decline to allow a cause of action in negligence against an attorney by a client's adverse party under the circumstances of the instant case.

Affirmed.

DANHOF, C.J., concurred.

MacKENZIE, J. *(dissenting).* I respectfully dissent. I would set aside the order of partial summary judgment entered by the circuit court and hold that an attorney may be liable in an action for negligence brought by his client's adversary for breach of his duty to conduct a reasonable investigation before instituting suit where it is reason-

ably foreseeable that a breach of such duty would injure the adversary.

## I. *A lawyer has a duty to investigate.*

Initially, we must determine whether the trial court erred in finding that the defendants did not owe a legal duty to plaintiff. I am aware that the decision of the trial judge is in accord with the great weight of present legal authority and that there are strong policy reasons upon which courts have relied in determining that an attorney owes no duty to his client's adversary. However, while the adversary system requires that an attorney be devoted to the cause of his client, justice requires that one who has suffered a wrong have access to the courts to seek his remedy.

Plaintiff urges us to regard the Code of Professional Responsibility as a body of standards establishing the minimum level of conduct for the legal profession, below which no lawyer may fall without being subject to disciplinary action. Plaintiff further suggests that, in the proper circumstances, certain of the provisions can be adopted to establish a standard of conduct, the violation of which is actionable at common law by the injured party. Plaintiff urges that code provisions are relevant and appropriate in assessing the substance of rights of injured third parties, particularly where the provisions of the code are reinforced by the Michigan General Court Rules, also adopted by the Supreme Court, as is the case with provisions proscribing the representation of untenable claims.

Canon 7 of the Code of Professional Responsibility adopted by the Michigan Supreme Court provides that "a lawyer should represent a client zealously *within the bounds of the law*". (Emphasis added.) Disciplinary Rule 7-102 amplifies the obli-

gation of the attorney pursuant to Canon 7, and
provides, in pertinent part:

"(A) In his representation of a client, a lawyer shall
not:
"(1) File a suit, assert a position, conduct a defense,
delay a trial, or take other action on behalf of his client
when he knows or when it is obvious that such action
would serve merely to harass or maliciously injure
another.
"(2) Knowingly advance a claim or defense that is
unwarranted under existing law, except that he may
advance such claim or defense if it can be supported by
good faith argument for an extension, modification, or
reversal of existing law.

* * *

"(5) Knowingly make a false statement of law or
fact."

In discussing the obligation imposed upon an attor-
ney by the aforesaid Canons and Disciplinary
Rules, Judge Horace E. Gilmore states:

"The meritoriousness of the action is a matter that
must always be carefully considered by the attorney. It
is his duty to advise a client fully and completely on
the merits of his case. *If he finds that there is not merit
in the contemplated action, it is his duty to advise his
client to that effect* and not to represent him in court if
the client refuses to accept such advice. The attorney is
an officer of the court, and, as such, when he appears in
court he represents to the court that he has examined
the claim of his client, that there is merit in it, and
that the claim or defense is not being asserted for
purposes of delay or harassment." Gilmore, 1 Michigan
Civil Procedure Before Trial (2d ed, 1975), § 1.3(D), p 15.
(Emphasis added.)

Furthermore, lawyers are required by the man-
date of the Code of Professional Responsibility to

temper their zeal in fulfilling their obligations as officers of the court. Ethical Consideration 7-10, accompanying Canon 7 of the Code of Professional Responsibility promulgated by the American Bar Association, explicitly recognizes that an attorney has a dual obligation under the Canon:

"The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm."[1]

Thus, it is clear that a duty of reasonable investigation in favor of a potential adversary would not conflict with or restrict a lawyer's duty and obligations to his client, but rather would be complementary to it.

The affirmative obligation to conduct a reasonable investigation prior to the commencement of an action is also imposed upon an attorney by the provisions of GCR 1963, 114.2, which provide:

"Effect of signature. The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."

The foregoing provision is identical to the provision of Rule 11 of the Federal Rules of Civil Procedure. Cases which have considered the federal counterpart of GCR 114 are unanimous in holding that the rule casts an affirmative obliga-

[1] See Wise, Legal Ethics (Supp 1979), p 327. The ethical considerations to Canon 7 were relied on by the Michigan Supreme Court in *State Bar Grievance Administrator v Corace,* 390 Mich 419, 434, fn 9; 213 NW2d 124 (1973), in interpreting the intent and meaning of DR 7-102 of the Code of Professional Responsibility.

tion on the attorney who signs a pleading to conduct a reasonable investigation prior to the filing of such pleading. In *Heart Disease Research Foundation v General Motors Corp,* 1972 Trade Cases § 73,849 (SD NY, 1971), the court discussed Rule 11 of the Federal Rules of Civil Procedure as follows:

"That Rule, it is true, is seldom invoked by parties in federal civil actions. Yet, as the Rule at the very least implies, the signature of an attorney or law firm on a federal civil pleading amounts to a certificate by that signer that there are good grounds to support the pleading. As has been held by this court before, *Rule 11 casts an affirmative obligation upon counsel who signs a pleading to represent his honest belief that there are facts and law to support the claims asserted in that pleading.* * * * See *Freeman v Kirby,* 27 FRD 395 (SD NY, 1961)." 1972 Trade Cases § 73,849, pp 91,564-91,-565. (Emphasis added.)

See *Levy v Seaton,* 358 F Supp 1, 6 (SD NY, 1973).

The purpose of the signature rule is to create a duty on counsel, as an officer of the court, to prevent the filing of frivolous and baseless claims by requiring an investigation by counsel to enable him to represent in good faith his honest belief that there are facts and law to support the claim.

As a result of these requirements, it can be said that the attorney-client relationship imposes upon an attorney the affirmative obligation to conduct such an investigation as is reasonable under the circumstances to determine whether his client has a viable claim.

*II. Attorney's liability should be based on foreseeability not privity.*

We must next consider whether a person who is foreseeably injured as a result of the breach of

that duty may maintain a cause of action for negligence. In granting summary judgment on plaintiff's negligence count, the trial judge accepted the assertion that the attorney's duty does not extend beyond the confines of the attorney-client relationship, finding that he was bound to follow two previous Michigan Court of Appeals decisions, *Friedman v Dozorc,* 83 Mich App 429; 268 NW2d 673 (1978), *lv gtd* 405 Mich 823 (1979), and *Gasis v Schwartz,* 80 Mich App 600; 264 NW2d 76 (1978). In *Friedman* and *Gasis,* this Court affirmed dismissals of negligence claims against attorneys who had commenced what proved ultimately to be unsuccessful medical malpractice actions against physicians. In both cases it was held that the duty of the attorney in connection with the commencement of an action is owed only to his client and does not extend to the potential adversary.

In *Friedman, supra,* 435-436, a panel of this Court acknowledged "the demise of the privity requirement", but nonetheless invoked the authority of *Savings Bank v Ward,* 100 US 195; 25 L Ed 621 (1879), which expressly required privity for recovery by a third party against an attorney. Further, relying on *Rosenberg v Cyrowski,* 227 Mich 508, 513; 198 NW 905 (1924), the *Friedman* Court concluded that absent privity of contract, the attorney's liability to third parties is limited to cases involving fraud, collusion, or malicious prosecution. *Friedman, supra,* 436. Although *Rosenberg* did concern a situation where the attorney allegedly knowingly gave false advice to a third party who relied to his detriment, the case was significant due to its holding that an attorney would be held responsible for erroneous legal advice even though he had absolutely no duty to give such

advice. The *Rosenberg* Court, *supra,* 513, cited with approval 1 Thornton on Attorneys at Law, § 295, for the proposition that:

"An attorney's liability does not end with being answerable to his client. He is also liable to third persons who have suffered injury or loss in consequence of fraudulent or tortious conduct on his part."

The privity doctrine, being subjected over the years to a number of exceptions to avoid its harsh results, has since been abandoned in the areas of general negligence and products liability, *Spence v Three Rivers Builders & Masonry Supply, Inc,* 353 Mich 120; 90 NW2d 873 (1958), *Piercefield v Remington Arms Co, Inc,* 375 Mich 85; 133 NW2d 129 (1965), and liability of certain professionals (abstracters), *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974). Additionally, the privity requirement has been by-passed by application of the third-party beneficiary doctrine. See *Talucci v Archambault,* 20 Mich App 153; 173 NW2d 740 (1969).

The abandonment of the requirement with respect to the liability of various professionals rendering advice is not as clear. The liability of abstracters, in a sense, is distinguishable under the third-party beneficiary doctrine because in such a case it is foreseeable that the buyer of property will rely on an abstract and is an intended beneficiary even though it was the seller who was in privity of contract with the abstracter. The third-party beneficiary doctrine is inapplicable in the area of an attorney's liability to his client's adversaries because it can hardly be said that the latter were intended beneficiaries of the attorney-client relationship.

Disputing the abandonment of the privity re-

quirement in the area of liability of professionals, defendants cite *Rogers v Horvath,* 65 Mich App 644; 237 NW2d 595 (1975). In that case, plaintiff brought a medical malpractice action against the doctor hired by her employer to examine her for the purpose of assessing the validity of her workers' compensation claim. Defendant-doctor testified at plaintiff's earlier workers' compensation hearing that "she was a malingerer", and not disabled. The referee decided that plaintiff was not disabled. Thus, plaintiff sued defendant for malpractice, alleging that defendant had failed to examine her properly, resulting in his failure to diagnose her condition and the denial of her workers' compensation claim. The Court denied liability, emphasizing the lack of a physician-patient relationship and the lack of any medical treatment by defendant:

"Under such circumstances, the defendant did not owe plaintiff any duty arising from a physician-patient relationship. This is not to say that a physician who examines a person for reasons other than diagnosis or treatment and for the benefit of someone other than the examinee owes no duty of due care to that person. Rather, we hold that the physician in such a case does not owe such a duty of care as will subject him to liability for malpractice." (Footnote omitted.) *Id.,* 647.

*Rogers* has been limited to a situation where the defendant-physician did not undertake to perform treatment on the plaintiff. *Pankow v Sables,* 79 Mich App 326, 337; 261 NW2d 311 (1977). I find persuasive the reasoning of the Maryland Court of Appeals in *Hoover v Williamson,* 236 Md 250; 203 A2d 861; 10 ALR3d 1064 (1964), that a physician may incur tort liability independent of contract where he assumes to act by rendering treatment, even though gratuitously; he thereby becomes subject to the duty of acting carefully, if he acts at all.

The liability of fire insurers for negligence in the inspection of premises to employees of the insureds was recently considered by the Michigan Supreme Court in *Smith v Allendale Mutual Ins Co,* 410 Mich 685, 705; 303 NW2d 702 (1981). In six cases consolidated on appeal, the Court held that "[t]he law does not impose a duty on insurers to inspect the premises of their insureds, although such an obligation may be undertaken". The Court further held that:

"An insurer's inspection of an insured's premises for fire hazards does not in itself demonstrate an undertaking to render fire inspection and prevention services to the insured. Absent evidence that the insurer agreed or intended to provide services for the benefit of the insured, there is no basis for a conclusion that such inspections are conducted other than to serve the insurer's interests in underwriting, rating and loss prevention and hence there is no undertaking. An insurer who does not undertake to inspect for the insured's benefit owes no duty to the insured or the insured's employees to inspect with reasonable care; such an insurer is, however, subject to liability if it engages in affirmative conduct creating or enlarging a fire hazard." *Id.,* 705-706.

Thus, I would conclude that absent privity through a contractual relationship, liability for negligence for legal advice or actions is only engendered where (1) the law imposes a duty of care on the attorney with respect to the plaintiff, (2) it is foreseeable that plaintiff will be harmed by the attorney's negligence, and (3) the plaintiff actually suffers harm as a result of the attorney's negligence.

Michigan law imposes a duty on an attorney to investigate by making reasonable inquiries and examining evidence accessible to his client and

himself to determine in good faith that a factual and legal basis for the claim exists. This duty runs to persons who are defendants to groundless actions. It is certainly foreseeable that a person who becomes the object of a groundless lawsuit will suffer damages.

*III. Policy considerations.*

The remaining question is whether the policies for allowing an attorney to commence a lawsuit without conducting a reasonable preliminary investigation of available facts and evidence do not as a matter of law outweigh countervailing policies and the foreseeable risk of harm to potential adversaries. As a matter of law, negligence will not be predicated on conduct if the court determines that the social utility of defendant's conduct is so great that it should be fully protected. *Moning v Alfono,* 400 Mich 425, 434; 254 NW2d 759 (1977). However, in most cases, the resolution of the balance between the value of defendant's conduct and the risk of harm thereby created depends on the reasonableness of the risk and defendant's conduct and should be determined by a jury. *Id.*

Upon considering plaintiff's allegations of misconduct by defendants, which must necessarily be taken as true by this Court in reviewing the trial court's grant of summary judgment in favor of the defendants, I cannot say that defendants' conduct should enjoy "absolute protection" or that defendants' conduct is, as a matter of law, "reasonable". The failure of an attorney under the facts herein to undertake proper preliminary investigation of readily available facts and objective evidence could provide the basis for a jury to decide that the attorney acted unreasonably in bringing suit.

It would be unrealistic to argue that harm to a client's potential adversary is not foreseeable

where an attorney files a lawsuit without undertaking the type of investigation necessary and appropriate under the circumstances to form a good-faith belief that a tenable claim is involved. Further, the harm to the adversary is real and significant, including economic harm in the form of legal fees, lost time spent in defending against the claim, and, in the case of some professionals, increased costs for malpractice insurance or even cancellation of malpractice insurance. There are also the more intangible forms of harm, such as mental distress and damage to reputation, which may themselves have substantial economic ramifications. Considering the severity of the harm to the potential adversary and the degree of the probability of its occurrence where insufficient investigation is undertaken by the attorney, it is obvious that the risk of harm is very significant. I would find that this risk of harm in cases involving egregious attorney conduct, together with the social policies discussed herein favoring enforcement of the duty of adequate investigation on attorneys, *outweighs* the competing considerations favoring an unrestrained legal profession. Thus, defendants' conduct is not entitled to "absolute protection" as a matter of law within the meaning of *Moning.*

Lawyers will not be deterred from zealously representing the tenable claims of their clients. Both the *Friedman* and *Gasis* decisions, upon which the trial court based its decision, assume that a lawyer's duty to represent zealously the interests of his client somehow conflicts with the existence of a leal duty in favor of the potential adversary of the client. There is no inconsistency between an attorney's duty to be a zealous advocate of his client's interests and the recognition of

certain duties running in favor of his client's adversary. The lawyer already bears the duty of representing his clients "within the bounds of the law". The bounds of the law can and should require counsel to fulfill his professional trust and responsibility to the court, the public, and potential adversary parties by conducting such a reasonable investigation under the circumstances as is necessary and appropriate to form a good-faith belief that his client has a tenable claim. The principle of ardent representation is not sacrificed in any way by recognition and enforcement of such a duty.

The compatibility of the duties of zealous representation and of reasonable investigation of law and fact was recognized in *Tool Research & Engineering Corp v Henigson,* 46 Cal App 3d 675, 683-684; 120 Cal Rptr 291 (1975):

"So long as the attorney does not abuse that duty [of zealous representation] by prosecuting a claim which a reasonable lawyer would not regard as tenable or by unreasonably neglecting to investigate the facts and law in making his determination to proceed, his client's adversary has no right to assert malicious prosecution against the attorney if the lawyer's efforts prove unsuccessful."

Clearly, these two duties may be fulfilled without either interfering with the other.

In fact, such a duty is consistent with duties to the client's adversary already created by the Code of Professional Responsibility and the court rules. Defendants herein, concurrently with their professional obligations to their clients, were and will continue to be required by the mandate of the Code of Professional Responsibility and the court rules to temper their zeal in fulfilling their obliga-

tion as officers of the court. The code explicitly recognizes that an attorney has a dual obligation to his client and all others involved in the legal process. Thus, the lawyer's duty of reasonable investigation in favor of a potential adversary is substantially coextensive with the lawyer's existing ethical duties.

The second major premise of the *Gasis* and *Friedman* decisions is that negligence actions brought against attorneys by third parties would subvert the public policy favoring free access to the courts. Free access to the courts is obviously a fundamental right of every citizen. The policy favoring free access has been principally relied upon by courts in other jurisdictions in resolving the issue before this Court. The free access argument, presumably, is that lawyers will be fearful of initiating "borderline" cases due to the prospect of thereby incurring liability to the client's adversary and that parties with meritorious claims will be deprived of their due right of access to the courts.

The attorney is not a mere conduit by which the citizen avails himself of the free access right. It is incumbent on the attorney under the Canons of Professional Responsibility and the Michigan General Court Rules to exercise professional judgment as to the facts and the applicable law to determine whether the client has a tenable claim or one which is groundless. Though the client may be intent on suing another party, the lawyer is still obligated to assess the merits of the claim in relation to the available facts. Because the legal duty called for by plaintiff does not extend beyond the attorney's existing obligations, free access should not be restricted, any more than it already is, by the operation of those obligations.

A lawyer licensed to practice law in the State of Michigan is presumed to be knowledgeable as to what facts are fundamentally relevant to determining the existence of a bona fide claim. Legal minds may differ substantially as to the likelihood of success on the merits, and lawyers certainly cannot be and should not be insurers of success. Where the facts are in doubt, the attorney should be entitled to resolve those doubts in favor of the client. But legal minds should not differ in evaluating whether a lawyer has satisfied the minimal requirement that he advance only tenable claims or whether the preliminary investigation into the facts and available evidence has been deficient.

It is well to keep in mind that the duty of reasonable preliminary investigation into fundamentally relevant facts creates no additional burdens on the individual attorney which he will not have to bear eventually in the course of the litigation if he genuinely intends to present a convincing case to the court and to the trier of fact. Unless the lawyer is under the duress of the statute of limitations, he has no excuse for failing to ascertain fundamentally relevant facts and review the readily available material evidence before commencing litigation against a possibly innocent or even uninvolved party. At the time defendants commenced the case on behalf of Linda and Gerald Koras against plaintiff, the statute of limitations had six months to run.

*IV. Conclusion.*

The applicable standard is that the attorney is answerable in negligence to his client's adversary for the failure, prior to commencing suit, to conduct such an investigation as is reasonably necessary under the circumstances to allow the attorney to make a good-faith determination that there are

legal and factual grounds to support the allegations contained in the complaint. See the affirmative obligation imposed on the attorney to conduct a reasonable investigation prior to commencing suit as expressed in *Tool Research, supra,* 683-684:

"An attorney has probable cause to represent a client in litigation when, after a reasonable investigation and industrious search of legal authority, he has an honest belief that his client's claim is tenable in the form in which it is to be tried * * *. The test is twofold. *The attorney must entertain a subjective belief in that the claim merits litigation and that belief must satisfy an objective standard * * *.*

* * * So long as the attorney does not abuse that duty [of zealous representation] *by prosecuting a claim which a reasonable lawyer would not regard as tenable or by unreasonably neglecting to investigate the facts and law* in making his determination to proceed, his client's adversary has no right to assert malicious prosecution against the attorney if the lawyer's efforts prove unsuccessful." (Emphasis added.)

It should be emphasized that counsel has no obligation to be satisfied that the client will prevail in the litigation. What counsel must do is to conduct such investigation as to enable him to come to the honest belief that the client has an arguable claim.